UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JASON NEERMAN, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL NO. <u>6:21-cv-00585</u> |
| | § | |
| CVS HEALTH CORPORATION, | § | |
| AETNA, INC. , AND THE AETNA, INC. | § | |
| JOB ELIMINATION BENEFITS | § | |
| PLAN, | § | |
| | § | |
| DEFENDANTS. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **JASON NEERMAN** (hereinafter "Plaintiff" or "Neerman") complaining of **CVS HEALTH CORPORATION** ("CVS"), **AETNA, INC.** ("Aetna"), and the **AETNA, INC. JOB ELIMINATION BENEFITS PLAN** (the "Aetna Benefits Plan") (collectively, "Defendants" or "CVSH") and hereby files this his Plaintiff's Original Complaint and respectfully show unto the Court as follows:

### I.     PARTIES

1.     Plaintiff Neerman is an individual citizen of the State of Texas and resides in McLennan County with his principal address located at 168 Stone Lake Drive, Woodway, Texas 76712.

2.     Defendant CVS Health Corporation is a corporation organized under the laws of the state of Delaware, with its principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895, and may be served via its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

3.      Defendant Aetna, Inc. is a corporate subsidiary of CVS Health Corporation and notice of this arbitration may be served by serving CVS Health Corporation's registered agent as shown above, or Aetna Inc.'s agent for service of legal process, the Executive Vice President and General Counsel, Aetna, Inc., 151 Farmington Avenue, RC6A, Hartford, Connecticut, 06156.

4.      Defendant Aetna Benefits Plan is a benefits and/or severance plan established under the Employee Retirement Income Security Act of 1974 ("ERISA"), is administered by Aetna and/or CVS and may be served through Candace Jodice or Keith Christensen, the delegates of the Administrator of the Aetna Benefits Plan at One CVS Drive, Woonsocket, Rhode Island 02895.

## II.      JURISDICTION & VENUE

5.      This Court has jurisdiction over this matter under 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331 because an action is being brought under 29 U.S.C. §§ 1132, 1133 and 1140.

6.      This Court may also have jurisdiction over the matter under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds seventy-five thousand dollars ($75,000) and because Plaintiff is a citizen of Texas and Defendants are citizens of a different state.

7.      Venue is proper in the Western District of Texas under 29 U.S.C. § 1132(e)(2) because it is the district where the alleged breach took place or where one or more Defendants may be found. At all times relevant, Plaintiff was employed by Defendants Aetna and/or CVS in McLennan County, Texas and sought to received benefits from the Aetna Benefits Plan in McLennan County, Texas.

## III.      FACTS

8.      Aetna is a managed health care company that sells traditional and consumer directed health care insurance and related services throughout the United States.

9.      In connection with the sale of its health care services, Aetna spends considerable resources lobbying states and the federal government, employing a Governmental Affairs and/or Governmental Relations Department.

10.     In or around 2003, Aetna instituted its Job Elimination Benefits Plan (the "Aetna Benefits Plan"), which provided, among other things, for certain salary continuation and severance benefits to be paid to employees whose termination of employment is related to a change in control from Aetna to another entity (e.g. a merger or acquisition)  (referred to as a "Change in Control").

4.3     **Change in Control.** The provisions of this Section 4.3 will supercede any provision of the Plan to the contrary.

(a)     The Plan may not be terminated or amended for two years after the occurrence of a Change in Control.

(b)     In the event of a Change in Control, for one year following the Change in Control, the Company and all Participating Companies, and all successors to the Company and all Participating Companies, shall maintain benefit plans, for persons employed as of the day immediately preceding the Change in Control who remain employed subsequent to the Change in Control, the aggregate value of which, on an annual basis, is not less than the aggregate value of the Benefit Plans maintained by the Company and all Participating Companies immediately prior to the Change in Control.  For purposes of this provision, Benefit Plans shall be the following Aetna Inc. plans:

(1)     Incentive Savings Plan

(2)     Retirement Plan for Employees of Aetna Inc.

(3)     Supplemental Incentive Savings Plan

(4)     Supplemental Pension Benefit Plan

(5)     Medical/Dental Plan (including Retiree Medical)

(6)     Managed Short-Term Disability Benefits Plan

(7)     Managed Long-Term Disability Benefits Plan

(8)     Group Term Life

(9)     Job Elimination Benefits Plan

11.     A true and correct copy of the Aetna Benefits Plan is attached hereto and incorporated by reference herein as Exhibit No. 1.

12.     CVS Health Corporation is a healthcare company which owns and operates, among other things, the retail pharmacy chain, CVS Pharmacy.

13.     On or about December 3, 2017, CVS Health Corporation announced its intent to acquire substantial control of Aetna, Inc. for $69 billion.

14.     On or about January 1, 2018, Aetna amended its Benefits Plan, issuing Amendment No. 19, which among other things, broadened certain Aetna-legacy employees' rights to salary continuation and/or severance following the anticipated CVS acquisition.

> 1.     Section 4.3(c) of the Plan is amended to read in its entirety as follows:
>
> (c)     In the event of a Change in Control, the following Employees shall be paid an additional one (1) Week's Pay for each week of the 9 Week Salary Continuation Period, and if applicable, Severance Period:
>
> (1)     An Employee whose employment is terminated for any reason that would otherwise entitle them to benefits under the Plan and who has a Commencement Date that begins within one year following the Change in Control.
>
> (2)     An Employee whose termination is related to the Company's integration with CVS Health Corporation and who has a Commencement Date within the 12-month period that begins one year following the Change in Control and ends two years following the Change in Control, if the Employee was employed in one of the following departments on either the date of the Change in Control or the Employee's date of termination:
>
> - Compliance
> - Consumer Health & Services (including Pharmacy, Analytics, Digital)
> - Corporate Affairs (including, but not limited to, Communications, Government Relations, and the Aetna Foundation)
> - Enterprise Strategy
> - Finance
> - Health & Clinical Services
> - Human Resources
> - Information Technology
> - Institutional Business Marketing
> - Legal

15.    Amendment No. 19 was, on information and belief, meant to address the anticipated reorganization and/or layoffs of Aetna-legacy employees following the CVS acquisition.

16.    The Aetna Benefits Plan explicitly applied to employees within the Governmental Relations Department.

17.    Defendants use their own executives to act as the administrator(s) and/or delegates of the administrator(s) of the Aetna Benefits Plan.

18.    On or about November 28, 2018, CVS Health Corporation completed its acquisition of Aetna, Inc. and/or the Change in Control was finalized.[1]

19.    At the time of the Change in Control, Plaintiff Jason Neerman held a position as a Senior Governmental Relations Specialist in Aetna's Governmental Affairs Department, assigned to the following state legislative jurisdictions: Louisiana, New Mexico, Oklahoma and Texas.

20.    At all times relevant, Neerman was employed by Aetna in Waco, McLennan County, Texas.

21.    Neerman's only office while employed by Aetna was in Waco, McLennan County, Texas.

22.    In or around December 2018, following the Change in Control, Aetna's State and Governmental Affairs Departments were "lifted and shifted" from the Aetna organization to the Office of General Counsel for CVS.

23.    Also following the Change in Control, Neerman was now employed by CVSH.

24.    At all times relevant, Neerman was employed by CVSH in Waco, McLennan County, Texas.

---

[1] Although the CVS Health Corporation acquisition of Aetna, Inc. was finalized on November 28, 2018, the acquisition was made subject to the satisfaction of certain conditions imposed by the United States Department of Justice.

25.     Neerman's only office while employed by CVSH was in Waco, McLennan County, Texas.

26.     Thereafter, from December 2018 through June 2019, Aetna's State and Governmental Affairs was reorganized, with the Aetna-legacy positions being systemically eliminated and/or responsibilities transferred to CVS-legacy employees holding similar positions.

27.     In connection with the reorganization, Aetna's Executive Vice President and Chief of Staff, Steve Kelmar, was separated from his employment.

28.     Kelmar was an Aetna-legacy employee responsible for overseeing Corporate Affairs and Governmental Affairs.

29.     Importantly, Kelmar was the highest-ranking Aetna official with a responsibility for the Governmental Affairs Department.

30.     On or about December 14, 2018, also in connection with the reorganization, Jim Ricciuti's position was eliminated or otherwise transferred to a CVSH-legacy employee.

31.     Ricciuti was an Aetna-legacy employee and was the supervisor of Neerman's direct supervisor in Aetna's Department of Governmental Affairs.

32.     Prior to his separation from employment, Ricciuti reported directly to Steve Kelmar.

33.     On or about April 2, 2019, CVSH sent Neerman a Memorandum (the "Equity Award Memo") and a proposed Restrictive Covenant Agreement ("RCA"), requesting Neerman's signature on the RCA.

34.     A true and correct copy of the Equity Award Memo and RCA are attached hereto and incorporated by reference herein as Exhibit No. 2.

35.     Importantly, the Equity Award Memo stated that Neerman's execution of the RCA was "a condition of accepting your [Neerman's] 2019 equity award," and issued a deadline of June 14, 2019 for accepting the same, as follows:



As a condition of accepting your 2019 equity award, you are required to review and electronically sign a restrictive covenant agreement (RCA).

You will not be able to accept your RSU in E*TRADE until you have signed your RCA. The deadline for doing so is 11:59 p.m. on June 14, 2019. If you have questions, please contact your Human Resources Business Partner.

36.     Neither the Equity Award Memo nor that RCA stated, or even implied, that Neerman's continued employment with CVSH was dependent upon his execution of the RCA.

37.     In fact, the RCA stated in relevant parts:

> **10.     No Right of Continued Employment**.  This Agreement does not create an obligation on the Corporation or any other person or entity to continue my employment.

> **12.     Entire Agreement/No Reliance/No Modifications**.  This Agreement and any compensation, benefit or equity plan or agreement referred to herein or under which equity was granted, including the CVS Health Corporation Change in Control Agreement ("CIC Agreement"), to the extent those other agreements apply to me, set forth the entire agreement between the parties hereto and fully supersede any and all prior and/or supplemental understandings, whether written or oral, between the parties concerning the subject matter of this Agreement.  This agreement shall not have any effect on any prior existing

*See* Exhibit No. 2.

38.     Prior to the acquisition of Aetna, CVS had, on information and belief, a long-standing practice of requiring employees within its own Governmental Affairs Department to sign restrictive covenant agreements (i.e. covenant's not to compete).

39.     Aetna did not appear to have the same pattern or practice prior to the CVS acquisition.

40.     Continuing with the reorganization, on or about May 3, 2019, Elena Butkus's position, Head of State Governmental Affairs for Aetna, was eliminated or otherwise transferred to a CVSH-legacy employee.

41.     Butkus was an Aetna-legacy employee and was Neerman's direct supervisor.

42.     Prior to her separation from employment Butkus reported directly to Jim Ricciuti.

43.     Also on or about May 3, 2019, Neerman was contacted by CVSH Senior Vice President of Governmental Affairs, Melissa Schulman, and Vice President of National Governmental Affairs, Louis Finkle, to announce a formal "realignment" of the Aetna Governmental Affairs Department.

44.     At this time, Neerman was informed that three of his four assigned jurisdictions were being shared by a CVSH-legacy counterpart.

45.     Neerman's largest jurisdiction, Texas, was being shared by Neerman's new CVSH-legacy supervisor.

46.     Importantly, CVSH also announced its intention to move all jurisdictions to single representation following the close of the 2019 legislative sessions.

47.     On or about May 7, 2019, Neerman was informed by a CVSH-legacy counterpart that she'd been assigned one or more of Neerman's jurisdictions and that Neerman's service would no longer be required by CVSH within the jurisdiction.

48.     On or about June 11, 2019, Vice President of National Governmental Affairs, Louis Finkle, urged Neerman to execute the RCA, stating that "**all of your colleagues have already signed the RCA.**"

49.     On or about June 25, 2019, Neerman was informed that his job at CVSH had been terminated effective July 5, 2019.

50.     Neerman's employment ended within one year of the Change in Control.

51.     On or about July 29, 2019, Neerman made a claim (the "Claim") to Defendants for payment salary and benefits under the Aetna Benefits Plan.

52.     A true and correct copy of Neerman's July 29, 2019 Claim is attached hereto and incorporated by reference herein as Exhibit No. 3.

53.     Neerman expected to receive benefits under the Aetna Benefits Plan in Waco, McLennan County, Texas.

54.     On or about October 28, 2019, the Aetna Benefits Plan by and through its delegate and/or Administrator (Candace Jodice, CVS Vice President of Benefits) DENIED Neerman's claim for salary and benefits under the Plan.

55.     In its denial, the Administrator, among other things, failed or refused to consider all applicable Plan provisions and willfully ignored facts giving rise to the subject claim.

56.     According to the Administrator's October 28, 2019 denial letter, Neerman had a right to appeal this decision under the Aetna Benefits Plan as follows:

> Section 3.3 of the Plan provides a mechanism for Mr. Neerman (or his duly authorized representative) to appeal this adverse benefit determination. Any such appeal must be made, in writing, within 60 days from the date of this letter. A written request for an appeal may be made to the Administrator by certified mail, postage prepaid, addressed to: Attn: Keith Christensen, Senior Vice President of Human Resources, CVS Pharmacy, Inc. One CVS Drive, Woonsocket, RI 02895.

57.     With respect to an appeal, the Administrator represented that it would "re-examine all issues relevant to the original denial of Mr. Neerman's claim," as follows:

> If a timely appeal is made, the Administrator will re-examine all issues relevant to the original denial of Mr. Neerman's claim. Mr. Neerman (or his duly authorized representative) may submit written comments, documents, records, and other information relating to his claim for benefits under the Plan. Mr. Neerman (or his duly authorized representative) also shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to his claim for benefits. In the course of the Administrator's review on appeal, the Administrator will take into account all comments, documents, records, and other information submitted by Mr. Neerman (or his duly authorized representative) related to the claim, regardless of whether the information was submitted or considered in this initial determination.

58.     The Administrator also represented that <u>the Administrator would provide Neerman with a final decision on his in writing "**within 60 days of receipt of the written appeal.**"</u>

59.     On or about December 13, 2019, Neerman APPEALED the Aetna Benefits Plan Administrator's DENIAL of salary and benefits under the Plan, providing the Administrator with specific factual and legal bases for Neerman's claim.[2]

60.     In addition, Neerman also requested that the Administrator provide certain documents relevant to Neerman's claim, as required by the Plan.

61.     Again, Neerman expected to receive benefits under the Aetna Benefits Plan in Waco, McLennan County, Texas.

62.     A true and correct copy of Neerman's APPEAL and REQUEST FOR DOCUMENTS is attached hereto and incorporated by reference herein as <u>Exhibit No. 4</u>.

63.     On February 11, 2020, the Aetna Benefits Plan Administrator provided by e-mail some, but not all, of the documents Neerman requested in *order* to pursue the Claim.

64.     By way of example, with respect to Neerman's employment file, the Administrator admitted "**we [Administrator] have forwarded your request for Mr. Neerman's employment file to the HR department, <u>and once the request has been processed, the [employment] file will be forwarded to you.  We anticipate that the file will be sent to you in the very near future.</u>**"

65.     Nonetheless, despite these representations, the Administrator failed (even to the present day) to provide crucial documents related to Neerman's claim, including among other things, Neerman's employment file, any record of disciplinary action taken against Neerman (prior to his termination) and CVSH's progressive discipline policy.[3]

---

[2] From this point forward, Keith Christensen, Senior Vice President, HR Corporate Services for CVS appeared to act as the delegate, or agent, of the Administrator of the Aetna Benefits Plan.

[3] In its February 11, 2020 letter, the Administrator represented that CVSH would provide Neerman's Employment file as requested by Neerman.  But CVSH never provided Neerman with a copy of his employment file.  In fact, the

66.     Despite admittedly *not* providing the requested employment file (and other documents) the Administrator's February 11, 2020 e-mail said "**now that we have provided you with the requested documents, I intend to begin my review of Mr. Neerman's appeal and respond to you within 60 days of today's date [February 11, 2020].**"

67.     Thus, according to the requirements of the Plan and the Administrator, a final decision on Neerman's appeal would be provided to Neerman within sixty (60) days, or by April 11, 2020.

68.     On March 11, 2020, when Defendants failed to provide the remaining documents, including the promised employment file, Neerman sent the Administrator a detailed letter addressing the Administrator's failure to provide all documents related to Neerman's claim.

69.     A true and correct copy of Neerman's March 11, 2020 letter is attached hereto and incorporated by reference herein as <u>Exhibit No. 5</u>.

70.     <u>The Administrator failed to respond to Neerman's March 11, 2020 letter, including Neerman's request for his own employment file and CVSH's Progressive Discipline Policy or Procedure</u>.

71.     On April 6, 2020, Neerman again sent the Administrator an email requesting a response to Neerman's March 11, 2020 letter and second request for documents.

72.     A true and correct copy of Neerman's April 6, 2020 e-mail is attached hereto and incorporated by reference herein as <u>Exhibit No. 6</u>.

73.     Again, <u>the Administrator failed to respond to Neerman's April 6, 2020 letter</u>.

74.     On April 11, 2020, the 60-day deadline for the Aetna Benefits Plan and/or Administrator to respond and/or render a final ruling on Plaintiff's appeal expired.

---

Administrator's Final Denial (May 4, 2020) stated that the Administrator actually reviewed Neerman's employment file in the process of reaching its decision on the Appeal, but simply refused to produce the file to Neerman. To this day, Neerman still has not been provided with a copy of his employment file.

75. **The Aetna Benefits Plan, Administrator and/or designee failed to provide a final ruling and/or response to Plaintiff prior to the April 11, 2020 deadline**.

76. On April 15, 2020, Neerman sent the Administrator another email notifying the Administrator that the Plan deadline for deciding Neerman's Appeal had passed, again requesting a response to Neerman's March 11, 2020 letter and a third request for documents.

77. A true and correct copy of Neerman's April 15, 2020 e-mail is attached hereto and incorporated by reference herein as Exhibit No. 7.

78. Again, the Administrator failed to respond to Neerman's April 15, 2020 e-mail.

79. On April 30, 2020, Neerman sent the Administrator another email notifying the Administrator that the Plan deadline for deciding Neerman's Appeal had passed, again requesting a response to Neerman's March 11, 2020 letter and a fourth request for documents.

80. A true and correct copy of Neerman's April 30, 2020 e-mail is attached hereto and incorporated by reference herein as Exhibit No. 8.

81. Notably, between January 2020 and May 2020, counsel for Plaintiff and the Administrator successfully corresponded by e-mail no less than eight (8) times.

82. A true and correct copy of Plaintiff's e-mail communications with the Administrator leading up to the Administrator's late ruling are attached hereto and incorporated by reference herein as Exhibit No. 9.

83. During this same time period, Neerman requested a copy of his employment file (and other documents relevant to Neerman's claim and appeal) at least six (6) times. *See, e.g.,* Exhibit No. 9.

84. Yet, Defendants never provided the requested documents prior to the Administrator's final (belated) ruling on Neerman's APPEAL.

85.     On May 4, 2020, **83 days** (i.e. more than sixty (60) days) <u>from the date the</u> <u>Administrator provided its incomplete document production</u>, the Aetna Benefits Plan Administrator notified Neerman for the first time of its final DENIAL of Neerman's APPEAL.[4]

86.     Knowing that it failed to timely respond per terms the Aetna Benefits Plan, the Administrator fabricated a story in a clumsy attempt to excuse its untimely response and violation of the terms of the Aetna Benefits Plan, claiming that the Administrator had sent the response "to the wrong email address."

87.     In the Administrator's belated final DENIAL, the Administrator noted that "**this decision is final under the Plan… <u>Mr. Neerman has the right to bring a civil action under Section 502(a) of ERISA… Mr. Neerman has the right to receive, upon request and without charge, copies of documents, records and other information relevant to his claim for benefits.</u>**"

88.     Yet, even in its final DENIAL, the Administrator admittedly withheld and/or refused to provide Neerman documents relevant to his claim for benefits (e.g. Neerman's Employment File, Aetna's Progressive Discipline Policy, Neerman's Disciplinary Record), and continues to withhold such documents and information to the present day.

89.     The Administrator also failed and/or refused to acknowledge established facts in the Record and to apply the plain language of the Plan or otherwise address Neerman's factual and legal claim.  Finally, the Administrator willfully ignored Defendants obvious attempt to unlawfully interfere with Plaintiffs anticipated benefits under the Aetna Benefits Plan.

90.     For these and related reasons, Neerman has been forced to file suit.

## IV.   COUNT ONE:  IMPROPER DENIAL OF AETNA BENEFITS PLAN BENEFITS IN VIOLATION OF SECTION 502(A) OF ERISA, 29 U.S.C. § 1132(a)(1)(B)

91.     Plaintiff hereby incorporates all preceding paragraphs and further alleges as follows.

---

[4] The person who denied Plaintiff's Appeal was Keith Christensen, CVS Senior Vice President of HR Corporate Services.

92.     Plaintiff requests that the Court review the denial and/or termination of benefits in this case and declare that Plaintiff is entitled to all benefits under the Aetna Benefits Plan, including payment of all back benefits with interest.

93.     Plaintiff also requests that the Court review the denial and/or termination of benefits in this case and declare that Defendants failed or refused to timely process Plaintiff's claim and/or appeal for benefits and/or that Defendants failed to follow the claims process under the Aetna Benefits Plan and/or ERISA.

94.     Plaintiff also requests that the Court review the denial and/or termination of benefits in this case and declare that Defendants omitted, willfully ignored and disregarded facts, information or documents in its possession which support Plaintiff's claim for benefits under the Aetna Benefits Plan.

95.     This is a claim to recover benefits, enforce rights, and clarify rights to future benefits under the Aetna Benefits Plan pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).

96.     Plaintiff was wrongfully denied substantive and/or procedural rights under the Aetna Benefits Plan.

97.     By way of example, Section 4.3(c)(2) of the Aetna Benefits Plan provides for monetary benefits to certain employees who are terminated following Aetna's merger with CVS (i.e. the "Change in Control"), stating in relevant part:

> **In the event of a Change in Control [merger], the following employees shall be paid an additional one (1) Week's Pay for each week of the 9 Week Salary Continuation Period, and if applicable, Severance Period… <u>An Employee whose termination is related to [Aetna's] integration with CVS Health Corporation…. if the Employee was employed in the… Governmental Relations Department</u>.**

98.     Section 4.3 also provides that "**the provisions of this Section 4.3 will supersede any provision of the Plan to the contrary.**"

99.     Yet, the Administrator explicitly and willfully ignored, among other things, Section 4.3(c)(2) of the Plan in its denial of Plaintiff's claim for benefits, despite Plaintiff's termination being "related to" Aetna's integration with CVS and Plaintiff having been undisputedly employed within Aetna's Governmental Relations Department prior to termination.

100.    In addition, Defendants and/or the Administrator had a fiduciary duty to the Plan and/or Plan participants and/or beneficiaries, including without limitation, Plaintiff.

101.    The Administrator breached its fiduciary duty under Section 502(a) of ERISA by, among other things, knowingly refusing to provide documents concerning the Plan and/or Plaintiff eligibility for the Plan, willfully ignoring Defendants unlawful attempts at interfering with Plaintiff's protected rights under the Aetna Benefits Plan, making material misrepresentations concerning both the RCA and the Aetna Benefits Plan and/or by having a conflict of interest.

102.    Plaintiff was wrongfully denied benefits under the Aetna Benefits Plan including, among other things:

      a.  $31,357.73 (9 weeks of continued salary)

      b.  $59,231.27 (severance pay – 17 weeks of salary)

      c.  $31,357.73 (9 additional weeks of continued salary due to Change in Control)

      d.  $59,231.27 (17 additional weeks of severance pay due to Change in Control).

103.    Plaintiff was also entitled to additional benefits in connection with Plaintiff's separation from employment totaling more than $15,000.

104.    Plaintiff is entitled to the foregoing benefits under the Aetna Benefits Plan because

      a.  The benefits are permitted under the Aetna Benefits Plan;

      b.  Plaintiff has satisfied all conditions to be eligible to receive benefits under the Aetna Benefits Plan;

      c.  Plaintiff has not waived or otherwise relinquished his entitlement to benefits under the Aetna Benefits Plan.

105.    Pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiff is an Aetna Benefits Plan participant and/or beneficiary and is entitled to sue for a judicial determination and enforcement of benefits.

106.    Defendants failed to give the Aetna Benefits Plan the legally correct interpretation, ignoring Section 4.3(c)(2) as amended by Amendment No. 19.

107.    Defendants improperly denied Plaintiff's benefits to which he was justly entitled, in contravention to the Aetna Benefits Plan and ERISA.

108.    As a participant and/or beneficiary in the Aetna Benefits Plan, and pursuant to 29 U.S.C. § 1132(c)(1)(B), Plaintiff requested in writing but was not provided the complete disclosure to which he was entitled.  *See, e.g.,* Exhibit No. 4-9.

109.    Defendants failed to provide the plan documents, the latest annual report, any terminal report, the bargaining agreement, trust agreement and/or other instruments under which the Aetna Benefits Plan was established and/or operates.  *See id.*

110.    Through the date of filing this Original Complaint, the formal plan documents and other instruments under which the plans are established and operate, for the Aetna Benefits Plan, as well as copies of the foregoing documents for any other ERISA plans in which Plaintiff was a participant and/or beneficiary are overdue.

111.    Disclosure penalties continue to accrue through the date of this Complaint.

112.    CVSH violated its absolute obligation to provide duly requested information and documents, entitling Plaintiff to the relief provided under ERISA of $110.00 per-item, per-day from the first day of said violation.

113.    CVSH violated its absolute obligation to follow its own claims procedures provided in the Aetna Benefits Plan, entitling Plaintiff to certain monetary and/or equitable relief under ERISA.

114.    Pursuant to 29 U.S.C. § 1132(g), Plaintiff is entitled to an award of reasonable attorney's fees and costs incurred in an action brought under ERISA.

115.    Plaintiff has been required to obtain the undersigned attorneys to represent him in this matter and has agreed to a reasonable attorney's fee as compensation for their services.

116.    Defendants have a conflict of interest in acting as the Administrator for the Aetna Benefits Plan.

117.    At all times relevant, the Administrator (and its delegees) were employed, in the course and scope of employment and/or acting on behalf of Defendants.

## V.    COUNT TWO:  FAILURE TO PROVIDE PLAN DOCUMENTS IN VIOLATION OF SECTION 502(C)(1) OF ERISA, 29 U.S.C. § 1132(c)(1)

118.    Plaintiff hereby incorporates all preceding paragraphs and further alleges as follows.

119.    Plaintiff was and is an Aetna Benefits Plan participant and/or beneficiary.

120.    Defendants violated Section 502(c)(1)(B) of ERISA, 29 U.S.C. § 1132(c)(1) by failing and/or refusing to comply with Plaintiff's requests for information required to be furnished to an Aetna Benefits Plan participant and/or beneficiary under ERISA.

121.    Plaintiffs first requested Aetna Benefits Plan information by letter dated December 13, 2019.

122.    On one or more occasions, the Administrator acknowledged *in writing* Plaintiffs' request for certain documents and represented *in writing* that Defendants would produce such documents prior to entering a final ruling on the subject claim.

123.    Nonetheless, Defendants ultimately failed or refused to provide crucial documents and/or information relevant to Plaintiff's claim for benefits under the Aetna Benefits Plan and which was expressly required to be produced under the same and under ERISA, despite their representations to the contrary.  *See, e.g.,* Exhibit Nos. 4-9.

124.    Plaintiff is entitled to $110 per day, after thirty (30) days from the date of Defendants' failure and/or refusal to comply with Plaintiff's request for plan information and/or documents, and

such other relief as the Court deems proper, pursuant to Section 502(c)(1)(B) of ERISA, 29 U.S.C. § 1132(c)(1)(B).

125.    At all times relevant, the Administrator (and its delegees) were employed, in the course and scope of employment and/or acting on behalf of Defendants and/or the Aetna Benefits Plan.

126.    Plaintiff is entitled to the relief described herein because

    a.    Plaintiff has repeatedly requested Defendants' Plan information and documents;

    b.    Defendants were required by Subchapter I of Title 29, Chapter 18 of the United States Code, to furnish this information to a plan participant or beneficiary;

    c.    Defendants failed and/or refused to comply with Plaintiff's repeated requests.

### VI.    COUNT THREE:  BREACH OF CLAIMS PROCEDURE IN VIOLATION OF SECTION 503 OF ERISA, 29 U.S.C. § 1133

127.    Plaintiff hereby incorporates all preceding paragraphs and further alleges as follows.

128.    Defendants substantially failed to comply with the Aetna Benefits Plan claims procedure and/or ERISA procedural requirements.

129.    Defendants failed to fully and fairly review Plaintiff's claim prior to the denial of benefits.

130.    Defendants' denial of benefits and/or final ruling on Plaintiff's claim and/or appeal was untimely.  *See, e.g.,* Exhibit Nos. 5-9.

131.    Defendants' denial of benefits and/or final ruling on Plaintiff's claim and/or appeal willfully ignored relevant facts, including without limitation facts identified in Exhibit Nos. 3, 4 and 5.

132.    Defendants' denial of benefits and/or final ruling on Plaintiff's claim and/or appeal willfully ignored or failed to apply certain Aetna Benefits Plan provisions, including without limitation Section 4.3(c)(2) as amended by Amendment No. 19.  *See, e.g.,* Exhibit No. 1 (pp. 15-16, 44-45).

133.    Defendants' denial of benefits and/or final ruling failed to fully and fairly review the subject claim, willfully ignoring the plain language of the Aetna Benefits Plan and the facts.

134.    For this and related reasons, Plaintiff seeks equitable relief, including without limitation, an order remanding the claim to the Aetna Benefits Plan Administrator with instructions to make a proper review of the claim and/or to follow the appropriate claim procedures, or alternatively, an award of full benefits entitled to Plaintiff under the Aetna Benefits Plan.

### VII.    COUNT FOUR: INTERFERENCE WITH PROTECTED RIGHTS IN VIOLATION OF SECTION 510 OF ERISA, 29 U.S.C. § 1140

135.    Plaintiff hereby incorporates all preceding paragraphs and further alleges as follows.

136.    Section 510 of ERISA, 29 U.S.C. § 1140, makes it "**unlawful for any person to discharge… or discipline any [ERISA plan] participant or beneficiary… for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.**"

137.    Following the Change in Control, Defendants reorganized Aetna's entire State and Governmental Affairs Department, with the Aetna-legacy positions being systemically eliminated and/or responsibilities transferred to CVS-legacy employees holding similar positions.

138.    For each Aetna-legacy position eliminated within the Governmental Affairs Department, the Aetna-legacy employee losing their job became immediately qualified and/or entitled to benefits under the Aetna Benefits Plan.

139.    Clearly, through their course of conduct and express statements, Defendants intent was to consolidate CVS and Aetna Governmental Affairs' departments, eliminating duplicative positions, including the position held by Plaintiff.

140.    By attempting to reorganize, consolidate and/or eliminate Plaintiff's position following the Change in Control, Defendant made Plaintiff's attainment of benefits under the Aetna Benefits Plan certain.

141.    However, in order to avoid payment under the Aetna Benefits Plan, Defendants manufactured an alternative, false, justification for separating Plaintiff from his employment contrary to the express terms of one or more contracts and, on information and belief, to Defendants' own progressive disciplinary policies.

142.    Rather than simply terminate Neerman as part of the reorganization and/or consolidation (as Defendants had done with every other person within Plaintiff's chain-of-command), and thereby qualify Neerman for benefits under the Aetna Benefits Plan, Defendants manufactured an alternate reason for terminating Plaintiff's employment – Plaintiff's failure to execute a restrictive covenant agreement, which by its own terms, was not a condition to continued employment.

143.    In fact, Defendants' even made material misrepresentations to Plaintiff intending to induce Plaintiff to execute the RCA and which plainly contradicted the RCA.

144.    Ultimately, Defendants unlawfully discharged and/or disciplined Plaintiff for the purpose of interfering with Plaintiff's attainment of one or more rights under the Aetna Benefits Plan in violation of Section 510 of ERISA, 29 U.S.C. § 1140.

145.    Subsequent to discharging Plaintiff, Defendants manufactured new reasons for Plaintiff's loss of employment - asserting that Plaintiff voluntarily resigned or had "chosen to leave" his employment with Defendants.

146.    Defendants' assertion that Plaintiff voluntarily resigned is inconsistent with written communications between the parties and which are in the possession of Defendants.

147.    Regardless, prior to Plaintiff's formal separation of employment, Defendants had already effectively stripped Plaintiff of his job duties and responsibilities as part of the Change in Control.

148.    At all times relevant, the Administrator (and its delegees) were employed, in the course and scope of employment and/or acting on behalf of Defendants.

149.     For this and related reasons, Plaintiff is entitled to bring a cause of action against Defendants under Section 502 of ERISA, 29 U.S.C. § 1132 to enforce its rights under 510 of ERISA, 29 U.S.C. § 1140, and to recover, among other things, payments owed under the Aetna Benefits Plan, documents and information Plaintiff is entitled to under the Plan and other equitable remedies to which Plaintiff may be entitled to by law.

## VIII.   COUNT FIVE: FRAUD

150.     Plaintiff hereby incorporates all preceding paragraphs and further allege as follows.

151.     Pleading in addition and in the alternative to Plaintiff's statutory claims under ERISA, Defendants made material misrepresentations to Neerman concerning, among other things, a restrictive covenant agreement.

152.     On November 28, 2018, CVS completed its acquisition of Aetna.  This acquisition triggered certain salary continuation and/or severance benefits for Aetna-legacy employees whose jobs were eliminated for a reason related to the acquisition and/or Change in Control.

153.     In the months following the 2018 Change in Control, CVS reorganized Aetna's State and Governmental Affairs department and systemically eliminated jobs belonging to Aetna-legacy employees within the same.

154.     In essence, CVSH consolidated CVS and Aetna's respective departments of governmental affairs, thereby triggering the Aetna Benefits Plan for any Aetna-legacy employees whose jobs were being consolidated and/or eliminated.

155.     Prior to the Change in Control, Neerman was a Senior Governmental Relations Specialist in Aetna's Governmental Affairs Department, assigned to the following jurisdictions: Louisiana, New Mexico, Oklahoma and Texas.

156.     CVS also had its own governmental relations specialists assigned to Louisiana, New Mexico, Oklahoma and Texas.

157.     Following the Change in Control, CVS systemically eliminated Aetna-legacy employees working within the consolidated Governmental Affairs Department.

158.     In fact, each Aetna-legacy manager within Neerman's chain-of-command was terminated and/or separated from their employment.

159.     Likewise, following the Change in Control, CVS's reorganization of the Governmental Affairs Department also included a re-assignment or temporary sharing of Neerman's jurisdictions to/with CVS-legacy employees.

160.     CVS also represented that it was CVS's intent to have a single employee representing each jurisdiction (i.e. single representation).

161.     While CVSH was systemically removing Aetna-legacy employees from the Governmental Affairs Department and stripping Neerman from his Aetna-legacy job responsibilities, CVSH also began making an effort to obtain Neerman's signature on a restrictive covenant agreement, which included among other things a broad covenant not to compete.

162.     At the time CVSH presented Neerman with the RCA, CVSH knew that it was systemically eliminating Aetna-legacy employees from within the Department of Governmental Affairs and stripping Neerman of substantially all of his job responsibilities.

163.     At the time CVSH presented Neerman with the RCA, CVSH also knew that Neerman, unlike CVSH-legacy employees, had never signed a restrictive covenant agreement while employed by Aetna.

164.     When presented with the RCA for signature, Neerman indicated that he may be unwilling to sign the RCA under the circumstances (i.e. where his job had effectively been eliminated) and was willing to forego the equity award.

165.     On or about June 11, 2019, Vice President of National Governmental Affairs, Louis Finkle, urged Neerman to execute the RCA, stating that "***all of your colleagues have already signed the RCA"*** in an obvious attempt to coerce Neerman to signing the RCA.

166.     On information and belief, Finkle's statement that "*all of your colleagues have already signed the RCA*" was false.

167.     In a further attempt to dupe Neerman into signing an RCA, CVSH then represented for the first time that Neerman's continued employment was dependent upon his signature on the RCA, a statement contradicted by the express language of the RCA itself.

168.     According to Paragraph 1 of the RCA, the sole consideration for the RCA was an "**equity award,**" which was "**contingent on the execution of this [RCA] Agreement.**"

169.     According to Paragraph 10 (entitled "No Right of Continued Employment"), "**the [RCA] does not create an obligation on [CVSH} or any other person or entity to continue [Neerman's] employment.**"

170.     Finally, according to Paragraph 12 of the RCA,

> the RCA set[s] forth the entire agreement between the parties hereto and fully supersedes any and all prior and/or supplemental understandings, whether written or oral, between the parties concerning the subject matter of this Agreement… **I agree and acknowledge that I have no relied on any representations, promises or agreements of any kind in connection with my decision to accept the terms of this Agreement,** except for the representations, promises and agreements herein.

171.     Neerman relied to his own detriment upon one or more material misrepresentations made by Defendants, including without limitation, the above-referenced representations.

172.     Defendants also withheld material information from Neerman aimed to further Defendants' purposes and/or for Defendants' material gain.

173.     Nonetheless, when Neerman agreed to forego his equity award and did not sign the RCA, CVSH ended Neerman's employment.

174.    Thereafter, CVSH denied Neerman's request for benefits under the Aetna Benefits Plan, alleging that Neerman voluntarily resigned, was insubordinate or otherwise failed to satisfy his job conditions.

175.    In sum, CVSH systemically eliminated Neerman's job and/or job responsibilities, presented Neerman with an unconscionable RCA intended to prevent Neerman from being employed elsewhere and, when Neerman declined the RCA, claimed that Neerman voluntarily resigned and then used the RCA as a pretense for denying Neerman benefits under the Aetna Benefits Plan.

176.    As a result of CVSH's material misrepresentations and/or fraudulent conduct, Neerman suffered damages for which Defendants should be held liable.

### IX. COUNT SIX: VICARIOUS LIABILITY AND RESPONDEAT SUPERIOR

177.    Plaintiff hereby incorporates all preceding paragraphs and further alleges as follows.

178.    Defendants are liable for the wrongful actions and omissions of its current and former employees and agents under Texas law and ERISA and should be held liable for every act and omission of its own employees or agents and any and all damages resulting therefrom.

179.    During all relevant time periods, the Administrator(s) and their delegees were acting as employees within their course and scope of employment with Defendants and/or as their authorized agents.

### X.    DAMAGES

180.    Plaintiff hereby incorporates all preceding paragraphs and further alleges as follows.

181.    As a direct and proximate result of the foregoing events, Plaintiff was entitled to, and has been denied benefits of, the following amounts under the Aetna Benefits Plan:

    a.    $31,357.73 (9 weeks of continued salary)

    b.    $59,231.27 (severance pay – 17 weeks of salary)

    c.    $31,357.73 (9 additional weeks of continued salary due to Change in Control)

      d.   $59,231.27 (17 additional weeks of severance pay due to Change in Control).

182.    In additional to the foregoing damages, Plaintiff was also entitled to additional benefits in connection with Plaintiff's separation from employment totaling more than $15,000.

183.    Plaintiff also seeks the recovery of reasonable attorney's fees and costs and/or expenses under 29 U.S.C. § 1132(g)(1).

184.    Plaintiff also seeks the recovery of exemplary or punitive damages.

## XI.    JURY TRIAL

185.    Plaintiff demands a jury trial and tenders the appropriate fee with this her Original Complaint.

## XII.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays to have and recover judgment against Defendants for:

1. An award of benefits under the Aetna Benefits Plan not previously paid to Plaintiff;

2. An award of monetary penalties with respect to Defendants' failure to provide plan documents and information upon written request;

3. Injunctive and other appropriate equitable relief to remedy the breaches of the Aetna Benefits Plan;

4. An award of attorney's fees pursuant to 29 U.S.C. § 1132(g)(1) and costs incurred in bringing this action;

5. Exemplary Damages;

6. Prejudgment and Post-judgment Interest; and

7. All other relief, in law and in equity, to which Plaintiff may be entitled.

Respectfully submitted,

**JOHNSON HOBBS SQUIRES, LLP**

/s/ Ryan C. Johnson
_____
Ryan C. Johnson
State Bar No. 24048574
Scott H. James
State Bar No. 24037848
Aaron Wilkerson
State Bar No. 24047104
The Roosevelt Tower
400 Austin Avenue, Suite 903
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
sjames@jhsfirm.com
awilkerson@jhsfirm.com

**ATTORNEYS FOR PLAINTIFF**

# EXHIBIT 1

**DOCUMENT TO BE FILED UNDER SEAL**

# EXHIBIT 2

 **MEMO**

As a condition of accepting your 2019 equity award, you are required to review and electronically sign a restrictive covenant agreement (RCA).

You will not be able to accept your RSU in E*TRADE until you have signed your RCA. The deadline for doing so is 11:59 p.m. on June 14, 2019. If you have questions, please contact your Human Resources Business Partner.

**CVS** pharmacy / caremark / minute clinic / specialty

Proprietary

**CVS Pharmacy, Inc.**
**Restrictive Covenant Agreement**

I, ___Jason Neerman (A128920)_____, enter into this Restrictive Covenant Agreement ("Agreement") with CVS Pharmacy, Inc., on its own behalf and on behalf of its subsidiaries and affiliates ("CVS"), which is effective as of the date I sign the Agreement ("Effective Date"). In consideration of the mutual promises in this Agreement, the parties agree as follows:

1.      **Consideration for Agreement**. In connection with my duties and responsibilities at CVS Health Corporation or one of its subsidiaries or affiliates, including Aetna Inc. (collectively, the "Corporation"), the Corporation will provide me with Confidential Information and/or access to the Corporation's customers and clients and the opportunity to develop and maintain relationships and goodwill with them. In addition, the Corporation has awarded me equity contingent on the execution of this Agreement and compliance with its terms. In consideration of the foregoing and the mutual promises in this Agreement, I hereby agree with CVS to comply with the terms of this Agreement.

2.      **Non-Competition**. During my employment by the Corporation and during the Non-Competition Period following the termination of my employment for any reason, I will not, directly or indirectly, engage in Competition or provide Consulting or Audit Services within the Restricted Area.

        a.      **Competition**. Engaging in "Competition" means providing services to a Competitor of the Corporation (whether as an employee, independent contractor, consultant, principal, agent, partner, officer, director, investor, or shareholder, except as a shareholder of less than one percent of a publicly traded company) that: (i) are the same or similar in function or purpose to the services I provided to the Corporation at any time during the last year of my employment by the Corporation; or (ii) will likely result in the disclosure of Confidential Information to a Competitor or the use of Confidential Information on behalf of a Competitor. If a representative of the Corporation, during my employment or the Non-Competition Period, requests that I identify the company or business to which I will be or am providing services, or with which I will be or am employed, and requests that I provide information about the services that I am or will be providing to such entity, I shall provide the Corporation with a written statement detailing the identity of the entity and the nature of the services that I am or will be providing to such entity with sufficient detail to allow the Corporation to independently assess whether I am or will be in violation of this Agreement. Such statement shall be delivered to the Corporation's Chief Human Resources Officer or his or her authorized delegate via personal delivery or overnight delivery within five calendar days of my receipt of such request.

        b.      **Competitor**. A "Competitor" for purposes of this Agreement shall mean any person, corporation or other entity that competes with one or more of the business offerings of the Corporation As of the Effective Date, the Corporation's business offerings include: (i) pharmacy benefits management ("PBM"), including: (a) the administration of pharmacy benefits for businesses, government agencies and health plans; (b) mail order pharmacy; (c) specialty pharmacy; (d) the procurement of prescription drugs at a negotiated rate for dispensing; and (e) Medicare Part D services; (ii) retail, which includes the sale of prescription drugs, over-the-counter medications, beauty products and cosmetics, digital and traditional photo finishing services, digital and other online offerings, seasonal and other general merchandise, greeting cards, convenience foods and other product lines and services which are sold by the Corporation's retail division ("Retail"); (iii) retail health clinics ("MinuteClinic"); (iv) the provision of pharmaceutical products and ancillary services, including specialty pharmaceutical products and support services and the provision of related pharmacy consulting, data management services and medical supplies to long-term care facilities, other healthcare service providers and recipients of services from such facilities ("Long-Term Care"); (v) the provision of prescription infusion drugs and related services ("Infusion"); (vi) the provision of insurance ("Insurance") including: (a) health insurance products and

services; (b) managed health care products and services; (c) dental, vision, workers' compensation and employee assistance program products and services; (d) wellness products and services to employers, government agencies, health plans, other businesses or third party payers; (e) other voluntary products that are excepted benefits under HIPAA; (vii) the creation and provision of population health management products and services ("Health Management"); (viii) the administration of (ii) – (vii) ("Administration"); and (ix) any other business in which Corporation is engaged or imminently will be engaged.

For the purpose of assessing whether I am engaging in "Competition" under section 2 (a) (i) above, a person, corporation or other entity shall not be considered a Retail Competitor if such entity derives annual gross revenues from its business in an amount which is less than 2% of the Corporation's gross revenues from Retail, during its most recently completed fiscal year. For avoidance of doubt, this exclusion does not apply to a determination of whether I am engaging in "Competition" as set forth in section 2 (a) (ii) above.

I and the Corporation acknowledge that both the Corporation's products and services and the entities which compete with the Corporation's products and services evolve and an entity will be considered a Competitor if it provides products or services competitive with the products and services provided by the Corporation within the last two years of my employment.

I agree to this enterprise-wide definition of non-competition which may prevent me from providing services to any of the Corporation's PBM, Retail, MinuteClinic, Long-Term Care, Health Management, Insurance, Administration and/or Infusion Competitors or any combination thereof during the Non-Competition period.

c.    **Consulting or Audit Services**.  "Consulting or Audit Services" shall mean any activity which involves providing audit review or other consulting or advisory services with respect to any relationship or prospective relationship between the Corporation and any third party that is likely to result in the use or disclosure of Confidential Information.

d.    **Non-Competition Period**.  The "Non-Competition Period" shall be the period of 12 months following the termination of my employment with the Corporation for any reason.

e.    **Restricted Area**.  "Restricted Area" refers to those states within the United States in which the Corporation conducts its business, as well as the District of Columbia and Puerto Rico.  To the extent I worked on international projects in Asia, Europe, Brazil or other countries where the Corporation may conduct business, the Restricted Area includes those countries and those countries where the Corporation is actively planning to conduct business.

3.    **Non-Solicitation**.  During the Non-Solicitation Period, which shall be during my employment by the Corporation and for 12 months following the termination of my employment with the Corporation for any reason, I will not, unless a duly authorized officer of the Corporation gives me written authorization to do so:

a.    interfere with the Corporation's relationship with its Business Partners by soliciting or communicating (regardless of who initiates the communication) with a Business Partner to: (i) induce or encourage the Business Partner to stop doing business or reduce its business with the Corporation, or (ii) buy a product or service that competes with a product or service offered by the Corporation's business. "Business Partner" means: a customer (person or entity), prospective customer (person or entity), healthcare provider, supplier, manufacturer, agency, broker, hospital, hospital system, long-term care facility, insurance client/customer and/or pharmaceutical manufacturer with whom the Corporation has a

2019 ENT RCA (5)

Proprietary

business relationship and with which I had business-related contact or dealings, or about which I received Confidential Information, in the two years prior to the termination of my employment with the Corporation. A Business Partner does not include a customer, supplier, manufacturer, broker, hospital, hospital system, long-term care facility and/or pharmaceutical manufacturer which has fully and finally ceased doing any business with the Corporation independent of any conduct or communications by me or breach of this Agreement and such full cessation of business has been in effect for at least 1 year prior to my separation from employment with the Corporation.    Nothing in this Paragraph 3(a) shall prevent me from working as a staff pharmacist or in another retail position wherein I would be providing or selling prescriptions or other products directly to consumers.

       b.     work on a Corporation account on behalf of a Business Partner or serve as the representative of a Business Partner for the Corporation.

       c.     interfere with the Corporation's relationship with any employee or contractor of the Corporation by: (i) soliciting or communicating with the employee or contractor to induce or encourage him or her to leave the Corporation's employ or engagement (regardless of who first initiates the communication); (ii) helping another person or entity evaluate such employee or contractor as an employment or contractor candidate; or (iii) otherwise helping any person or entity hire an employee or contractor away from the Corporation.

**4.**    **Non-Disclosure of Confidential Information**.

       a.     Subject to Sections 7 and 8 below, I will not at any time, whether during or after the termination of my employment, disclose to any person or entity any of the Corporation's Confidential Information, except as may be appropriately required in the ordinary course of performing my duties as an employee of the Corporation. The Corporation's Confidential Information includes but is not limited to the following non-public information: trade secrets; computer code generated or developed by the Corporation; software or programs and related documentation; strategic compilations and analysis; strategic processes; business or financial methods, practices and plans; non-public costs and prices; operating margins; marketing, merchandising and selling techniques and information; customer lists; provider lists; details of customer agreements; pricing arrangements with pharmaceutical manufacturers, distributors or suppliers including but not limited to any discounts and/or rebates; pricing arrangements with insurance clients and customers; pharmacy reimbursement rates; premium information; payment rates; contractual forms; expansion strategies; real estate strategies; operating strategies; sources of supply; patient records; business plans; other financial, commercial, business or technical information related to the Corporation and confidential information of third parties which is given to the Corporation pursuant to an obligation or agreement to keep such information confidential (collectively, "Confidential Information"). I shall not use or attempt to use any Confidential Information on behalf of any person or entity other than the Corporation, or in any manner which may injure or cause loss or may be calculated to injure or cause loss, whether directly or indirectly, to the Corporation. If, at any time over the last two years of my employment at CVS, my position included access to Confidential Information, as described above, specifically related to the Corporation's procurement of prescription drugs, I understand and agree my employment with a pharmaceutical manufacturer, distributor or supplier ("Pharmaceutical Entity") would place a substantial risk of use and/or disclosure of Confidential Information with which I have been or will be entrusted during my employment with the Corporation. In light of this risk of disclosure, I acknowledge and agree that the Corporation will be entitled to immediate injunctive relief to prevent me from disclosing any such Confidential Information in the course of my employment with any such Pharmaceutical Entity. I agree that the disclosure of such Confidential Information to the Corporation's PBM Competitors with which one may negotiate in the course of employment with such Pharmaceutical Entity, would cause immediate and irreparable harm to the Corporation. For employees residing in Connecticut, these restrictions on use or disclosure of Confidential Information will only apply for three

2019 ENT RCA (5)

Proprietary

(3) years after the end of my employment where information that does not qualify as a trade secret is concerned; however, the restrictions will continue to apply to trade secret information for as long as the information at issue remains qualified as a trade secret.

      b.     During my employment, I shall not make, use, or permit to be used, any materials of any nature relating to any matter within the scope of the business of the Corporation or concerning any of its dealings or affairs other than for the benefit of the Corporation.  I shall not, after the termination of my employment, use or permit to be used any such materials and shall return same in accordance with Section 5 below.

**5.**     **Ownership and Return of the Corporation's Property**.  On or before my final date of employment with the Corporation, I shall return to the Corporation all property of the Corporation in my possession, custody or control, including but not limited to the originals and copies of any information provided to or acquired by me in connection with the performance of my duties for the Corporation, such as files, correspondence, communications, memoranda, e-mails, slides, records, and all other documents, no matter how produced or reproduced, all computer equipment, including but not limited to any mobile phone or other portable digital assistant or device), computer programs and/or files, and all office keys and access cards.  I agree that all the items described in this Section are the sole property of the Corporation.

**6.**     **Rights to Inventions, Works**.

      a.     **Assignment of Inventions.**  All inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether patentable or otherwise protectable under similar law, made, conceived or developed by me, whether alone or jointly with others, from the date of my initial employment by the Corporation and continuing until the end of any period during which I am employed by the Corporation, relating or pertaining in any way to my employment with or the business of the Corporation (collectively referred to as "Inventions") shall be promptly disclosed in writing to the Corporation.  I hereby assign to the Corporation, or its designee, all of my rights, title and interest to such Inventions.  All original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Corporation and which are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act and as such are the sole property of the Corporation. The decision whether to commercialize or market any Invention developed by me solely or jointly with others is within the Corporation's sole discretion and for the Corporation's sole benefit and no royalty will be due to me as a result of the Corporation's efforts to commercialize or market any such Invention.

      b.     **Inventions Retained and Licensed.**  I have attached hereto as Exhibit A, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by me prior to my employment with the Corporation ("Prior Inventions"), which belong to me and are not assigned to the Corporation hereunder.  If no such list is attached, I represent that there are no such Prior Inventions. I will not incorporate, or permit to be incorporated, any Prior Invention owned by me or in which I have an interest into a Corporation product, process or machine without the Corporation's prior written consent.  Notwithstanding the foregoing sentence, if, in the course of my employment with the Corporation, I incorporate into a Corporation product, process or machine a Prior Invention owned by me or in which I have an interest, the Corporation is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process or machine.

Proprietary

c.  **Patent and Copyright Registrations.**  I will assist the Corporation, or its designee, at the Corporation's expense, in every proper way to secure the Corporation's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto, including, but not limited to, the disclosure to the Corporation of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Corporation shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Corporation, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto.  My obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after my employment ends for any reason and/or after the termination of this Agreement.  If the Corporation is unable because of my mental or physical incapacity or for any other reason to secure my signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to the Corporation as above, then I hereby irrevocably designate and appoint the Corporation and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by me.

d.  **Exception to Assignments**.  I understand that if I am an employee in Illinois, Kansas, North Carolina, Utah or Minnesota, I should refer to Exhibit B (incorporated herein for all purposes) for important limitations on the scope of the provisions of this Agreement concerning assignment of Inventions.  I will advise the Corporation promptly in writing of any inventions that I believe meet the criteria in Exhibit B and that are not otherwise disclosed on Exhibit A.

7.  **Cooperation**.

a.  In the event  I receive a subpoena, deposition notice, interview request, or other process or order to testify or produce Confidential Information or any other information or property of the Corporation, I shall promptly: (i) notify the Corporation of the item, document, or information sought by such subpoena, deposition notice, interview request, or other process or order; (ii) furnish the Corporation with a copy of said subpoena, deposition notice, interview request, or other process or order; and (iii) provide reasonable cooperation with respect to any procedure that the Corporation may initiate to protect Confidential Information or other interests.  If the Corporation objects to the subpoena, deposition notice, interview request, process, or order, I shall cooperate to ensure that there shall be no disclosure until the court or other applicable entity has ruled upon the objection, and then only in accordance with the ruling so made.  If no such objection is made despite a reasonable opportunity to do so, I shall be entitled to comply with the subpoena, deposition, notice, interview request, or other process or order provided that I have fulfilled the above obligations.

b.  I will cooperate fully with the Corporation, its affiliates, and their legal counsel in connection with any action, proceeding, or dispute arising out of matters with which I was directly or indirectly involved while serving as an employee of the Corporation, its predecessors, subsidiaries or affiliates.  This cooperation shall include, but shall not be limited to, meeting with, and providing information to, the Corporation and its legal counsel, maintaining the confidentiality of any past or future privileged communications with the Corporation's legal counsel (outside and in-house), and making myself available to testify truthfully by affidavit, in depositions, or in any other forum on behalf of the Corporation.  The Corporation agrees to reimburse me for any reasonable and necessary out-of-pocket costs associated with my cooperation.

Proprietary

**8.**     **Limitation on Restrictions.**  Nothing in this Agreement is intended to or shall interfere with my right to file charges or participate in a proceeding with any appropriate federal, state or local government agency, including the Occupational Safety and Health Administration ("OSHA"), National Labor Relations Board ("NLRB") or the Securities and Exchange Commission ("SEC"); to exercise rights under Section 7 of the National Labor Relations Act ("NLRA"); or to file a charge or complaint with or participate or cooperate in an investigation or proceeding with the US Equal Employment Opportunity Commission ("EEOC") or comparable state or local agencies. Such agencies have authority to carry out their statutory duties by investigating a charge, issuing a determination, filing a lawsuit, or taking any other action authorized by law.  I retain the right to participate in any such action and retain the right to communicate with the NLRB, SEC, EEOC, OSHA and comparable state or local agencies and such communication shall not be limited by any provision in this Agreement. Nothing in this Agreement limits my right to receive an award for information provided to a government agency such as the SEC and OSHA.  In addition, nothing in this Agreement is intended to interfere with or restrain the immunity provided under 18 U.S.C. § 1833(b) for confidential disclosures of trade secrets to government officials or lawyers, solely for the purpose of reporting or investigating a suspected violation of law, or in a sealed filing in court or other proceeding.

**9.**     **Injunctive Relief.**  Any breach of this Agreement by me will cause irreparable damage to the Corporation and, in the event of such breach, the Corporation shall have, in addition to any and all remedies of law, the right to an injunction, specific performance or other equitable relief to prevent the violation of my obligations hereunder, and without providing a bond to the extent permitted by the applicable rules of civil procedure.

**10.**     **No Right of Continued Employment**.  This Agreement does not create an obligation on the Corporation or any other person or entity to continue my employment.

**11.**     **No Conflicting Agreements**.  I represent that the performance of my job duties with the Corporation and my compliance with all of the terms of this Agreement does not and will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Corporation.

**12.**     **Entire Agreement/No Reliance/No Modifications**.  This Agreement and any compensation, benefit or equity plan or agreement referred to herein or under which equity was granted, including the CVS Health Corporation Change in Control Agreement ("CIC Agreement"), to the extent those other agreements apply to me, set forth the entire agreement between the parties hereto and fully supersede any and all prior and/or supplemental understandings, whether written or oral, between the parties concerning the subject matter of this Agreement.  This agreement shall not have any effect on any prior existing agreements between Corporation and me regarding the arbitration of workplace legal disputes and any such agreements remain in full force and effect. Notwithstanding the foregoing, if I am a party to the CIC Agreement, then I understand that in the event of a Change in Control, as that term is defined in the CIC, Paragraph 2 of this Agreement shall be null and void.  I agree and acknowledge that I have not relied on any representations, promises or agreements of any kind in connection with my decision to accept the terms of this Agreement, except for the representations, promises and agreements herein.  Any modification to this Agreement must be made in writing and signed by me and the Corporation's Chief Human Resources Officer or his or her authorized representative.

**13.**     **Beneficiaries of Global Amendment Relating to Non-Compete Covenants Applicable to Aetna Employees.**  I and Corporation understand, acknowledge and agree, that if I was an employee of Aetna Inc., its subsidiaries or joint venture affiliates prior to the Effective Time and am a Covered Individual, then notwithstanding the provisions of this Agreement, each of my Assumed Restricted Unit Awards, Assumed Performance Unit Awards and Assumed Stock Appreciation Rights (collectively, my

Proprietary

"Assumed Equity Awards") shall continue to have, and shall be subject to, the same terms and conditions as applied to the corresponding Company Equity Award, as amended by the Global Amendment to Agreements with Non-Compete Covenants Applicable to Aetna Employees effective November 28, 2018, as of the Effective Time (including any terms and conditions related to accelerated vesting upon a termination of the holder's employment in connection with or following the Merger).  Without limiting the generality of the foregoing, to the extent that I am subject to any Aetna Non-Compete Covenant:  (1) such Aetna Non-Compete Covenant shall not restrict me from rendering services to or otherwise being engaged with the activities of any business or organization that does not conduct or engage in the same business as the Pre-Merger Aetna Business;  (2) no penalties or detriments or remedies at law or in equity shall be asserted under this Agreement or any Aetna Non-Compete Covenant against my rights in any Assumed Equity Awards due to my rendering services to or otherwise engaging in any business or organization that does not conduct or engage in the same business as the Pre-Merger Aetna Business; and (3) no penalties or detriments or remedies at law or in equity shall be asserted under any Aetna Non-Compete Covenant against my rendering services to or otherwise engaging in any business or organization  that does not conduct or engage in the same business as the Pre-Merger Aetna Business. For avoidance of doubt, if I fail to comply with Section 2 of this Agreement, penalties, detriments or remedies at law or in equity may be asserted against me under this Agreement but not against my rights in any of such Assumed Equity Awards.

As used in this Section [13], the following terms have the following meanings:

"Aetna Non-Compete Covenant" means any agreement entered into by an individual with Aetna Inc., its subsidiaries or joint venture affiliates prior to the Effective Time that prohibits or restricts such person's entitlement to render services to or otherwise be engaged with the activities of any business that competes with the Pre-Merger Aetna Business (including, without limitation, equity award arrangements and employment arrangements).

"Assumed Performance Unit Award" means a time-vesting restricted unit award covering shares of Parent Common Stock resulting from the conversion and assumption by Parent of a Company PSU Award by virtue of the Merger in accordance with the Merger Agreement.

"Assumed Restricted Unit Award" means a restricted unit award covering shares of Parent Common Stock resulting from the conversion and assumption by Parent of a Company RSU Award by virtue of the Merger in accordance with the Merger Agreement.

"Assumed Stock Appreciation Right" means a stock appreciation right representing the right to receive a payment in shares of Parent Common Stock resulting from the conversion and assumption by Parent of a Company Stock Appreciation Right by virtue of the Merger in accordance with the Merger Agreement.

"Company Common Stock" means the common shares, par value $0.01 par value, of Aetna Inc.

"Company Equity Awards" means Company Stock Appreciation Rights, Company RSU Awards and Company PSU Awards.

"Company PSU Award" means a stock unit award with respect to shares of Company Common Stock outstanding under any Company Stock Plan that vests based on the achievement of performance goals.

"Company RSU Award" means a restricted stock unit award with respect to shares of Company Common Stock outstanding under any Company Stock Plan that vests solely based on the passage of time.

Proprietary

"Company Stock Appreciation Right" means a stock appreciation right representing the right to receive a payment in shares of Company Common Stock under any Company Stock Plan that was outstanding and unexercised immediately prior to the Effective Time.

"Company Stock Plans" means the Aetna Inc. 2016 Employee Stock Purchase Plan, the Amended Aetna Inc. 2010 Stock Incentive Plan, the Aetna Inc. 2010 Non-Employee Director Compensation Plan, the Aetna Inc. 2000 Non-Employee Director Compensation Plan, and the Amended and Restated Aetna Inc. 2000 Stock Incentive Plan, in each case, as amended from time to time.

"Covered Individual" means any current or former employee of Aetna Inc., its subsidiaries or joint venture affiliates who is subject to an Aetna Non-Compete Covenant.

"Effective Time" means 10:00 a.m. Eastern time on November 28, 2018.

"Merger" means the merger of Hudson Merger Sub Corp. with and into Aetna Inc., which became effective at the Effective Time.

"Merger Agreement" means the Agreement and Plan of Merger among CVS Health Corporation, Hudson Merger Sub Corp. and Aetna Inc. dated December 3, 2017.

"Parent" means CVS Health Corporation

"Parent Common Stock" means the common stock, $0.01 par value, of Parent.

"Pre-Merger Aetna Business" means the business of Aetna Inc., its subsidiaries and joint venture affiliates as of the Effective Time.

**14.      No Waiver**.  Any waiver by the Corporation of a breach of any provision of this Agreement, or of any other similar agreement with any other current or former employee of the Corporation, shall not operate or be construed as a waiver of any subsequent breach of such provision or any other provision hereof.

**15.      Severability**.  The parties hereby agree that each provision herein shall be treated as a separate and independent clause, and the unenforceability of any one clause shall in no way impair the enforceability of any of the other clauses herein.  Moreover, if one or more of the provisions of this Agreement are for any reason held to be excessively broad as to scope, activity, duration, subject or otherwise so as to be unenforceable at law, the parties consent to such provision or provisions being modified or limited by the appropriate judicial body (where allowed by applicable law), so as to be enforceable to the maximum extent compatible with the applicable law.

**16.      Survival of Employee's Obligations**.  My obligations under this Agreement shall survive the termination of my employment regardless of the manner of such termination and shall be binding upon my heirs, personal representatives, executors, administrators and legal representatives.

**17.      Corporation's Right to Assign Agreement**.  The Corporation has the right to assign this Agreement to its successors and assigns without the need for further agreement or consent by me, and all covenants and agreements hereunder shall inure to the benefit of and be enforceable by said successors or assigns.

2019 ENT RCA (5)

Proprietary

**18.**    **Non-Assignment**.  I shall not assign my rights and obligations under this Agreement, in whole or in part, whether by operation of law or otherwise, without the prior written consent of the Corporation, and any such assignment contrary to the terms hereof shall be null and void and of no force or effect.

**19.**    **Governing Law; Venue; Headings**.  This Agreement shall be governed by and construed in accordance with the laws of the state of Rhode Island. I agree that any claim or dispute I may have against the Corporation must be resolved by a court located in the state of Rhode Island. The headings of the sections contained in this Agreement are for convenience only and shall not be deemed to control or affect the meaning or construction of any provision of this Agreement.

**20.**    **Tolling.**  In the event I violate one of the time-limited restrictions in Sections 3 and 4 of this Agreement, I agree that the time period for such violated restriction shall be extended by one day for each day I have violated the restriction, up to a maximum extension equal to the length of the original period of the restricted covenant.

IN WITNESS WHEREOF, the undersigned has executed this Agreement as a sealed instrument as of the date set forth below.

Lisa Bisaccia
Chief Human Resources Officer
CVS Pharmacy, Inc.

A128920

Employee ID

Date: _____

2019 ENT RCA (5)

Proprietary

**EXHIBIT A**

**List of Prior Inventions – See Section 6**

2019 ENT RCA (5)

Proprietary

**EXHIBIT B**

**Notice Regarding Invention Assignment**

1.    For an employee residing in **Illinois, Kansas, or North Carolina**, you are hereby advised:

> **Notice.** No provision in this Agreement requires you to assign any of your rights to an invention for which no equipment, supplies, facility, or trade secret information of the Corporation was used and which was developed entirely on your own time, unless (a) the invention relates (i) to the business of the Corporation or (ii) to the Corporation's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by you for the Corporation. Illinois 765ILCS1060/1-3, "Employees Patent Act"; Kansas Statutes Section 44-130; North Carolina General Statutes Article 10A, Chapter 66, Commerce and Business, Section 66-57.1.

2.    For an employee residing in **Utah**, you are hereby advised:

> **Notice.** No provision in this Agreement requires you to assign any of your rights to an invention which was created entirely on your own time, and which is not (a) conceived, developed, reduced to practice, or created by you (i) within the scope of your employment with the Corporation, (ii) on the Corporation's time, or (iii) with the aid, assistance, or use of any of the Corporation's property, equipment, facilities, supplies, resources, or patents, trade secrets, know-how, technology, confidential information, ideas, copy rights, trademarks and service marks and any and all rights, applications and registrations relating to them, (b) the results of any work, services, or duties performed by you for the Corporation, (c) related to the industry or trade of the Corporation, or (d) related to the current or demonstrably anticipated business, research, or development of the Corporation. Utah Code Sections 34-39-1 through 34-39-3, "Employee Inventions Act."

3.    For an employee residing in **Minnesota**, you are hereby advised:

> **Notice.** No provision in this Agreement requires you to assign any of your rights to an invention for which no equipment, supplies, facility, or trade secret information of the Corporation was used, and which was developed entirely on your own time, and (a) which does not relate (i) directly to the business of the Corporation, or (ii) to the Corporation's actual or demonstrably anticipated research or development, or (b) which does not result from any work performed by you for the Corporation. Minnesota Statutes 13A Section 181.78.

Proprietary

# EXHIBIT 3

# Johnson | Hobbs | Squires
### A Limited Liability Partnership
#### www.jhsfirm.com

RYAN C. JOHNSON
rjohnson@jhsfirm.com

July 29, 2019

*VIA E-Mail, CMRRR and U. S. Mail*
Marianne McClure
HR Business Partner, CVS Health
marianne.mcclure@cvshealth.com
(847) 224-5286

*VIA CMRRR and U. S. Mail*
CVS Health
1 CVS Drive
Woonsocket, Rhode Island 02895

*VIA CMRRR and U. S. Mail*
Aetna
151 Farmington Ave
Hartford, Connecticut 06156

      Re:    Termination of Employment of Jason Neerman, Unconscionable Restrictive Covenant Agreement, Misrepresentation, Fraud, Breach of Contract

            THIS PROPOSAL IS CONFIDENTIAL IN NATURE AND IS INTENDED AS AN OFFER TO COMPROMISE OR OF SETTLEMENT UNDER TEXAS RULE OF EVIDENCE 408.

To Whom It May Concern:

    My firm has been retained by Jason Neerman ("Mr. Neerman" or "Neerman") to investigate the circumstances surrounding his recent termination from employment from CVS Health Corp. ("CVSH") and/or Aetna, Inc. ("Aetna"). The purpose of this letter is to provide CVSH and/or Aetna with notice of a claim and to make a demand for payment for salary and benefits due Mr. Neerman as a result of the systematic elimination of his position at Aetna.

    By way of background, CVSH has implemented a complete reorganization of its department of governmental affairs since its recent acquisition of Aetna, including the systematic removal of Aetna legacy upper management within this organization. Over the past six months, each of Mr. Neerman's Aetna legacy superiors have been separated from their employment with CVSH. Prior to his recent termination, Neerman was placed under the supervision of a CVSH legacy employee who was assigned the same job responsibility as Neerman. While certain job responsibilities were threatened and also threatening him with termination, CVSH attempted to coerce Neerman into executing a draconian restrictive covenant agreement (the "RCA"). When Neerman questioned the terms of the RCA and CVSH's misrepresentations concerning the same, Neerman's employment was formally terminated.

On or about November 28, 2018, CVSH completed the acquisition of Aetna (subject to the satisfaction of certain conditions imposed by the United States Justice Department). Shortly thereafter, the State and Federal Governmental Affairs Departments were "lifted and shifted" from the Aetna organization to the Office of General Counsel for CVSH. Over the ensuing months, nearly all of the Aetna legacy leadership (including Steve Kelmar, Jim Ricciuti and Elena Butkus) were separated from their employment from CVSH. Likewise, numerous Aetna legacy employees reporting to the above-referenced leadership were also separated from their employment during this time period. Meanwhile, CVSH management periodically sent message to employees discussing the need for additional reorganizations and consolidation and/or elimination of duplicative positions. On or about April 1, 2019, CVSH sent a Restrictive Covenant Agreement (the "RCA") to Neerman, requiring Neerman to execute the document by June 14, 2019. Although never stated in the RCA, CVSH management communicated to Neerman, and many other employees, that employees who chose not to sign the RCA would be terminated. On or about May 3, 2019, Mr. Neerman was informed by CVSH Senior Vice President of Governmental Affairs and Vice President of National Affairs of a "re-alignment" of resources and new reporting structure. According to CVSH, Neerman would now report to a CVSH legacy employee who was also responsible for the same state (Texas) as Neerman and share responsibility for Oklahoma and Louisiana with another CVSH legacy employee until the end of the current legislative session and/or acts of procurements. Yet, CVSH senior management also represented that it was the intent of CVSH State Governmental Affairs to consolidate the workforce into single representation in each jurisdiction, including the states of Texas, Oklahoma and Louisiana. On May 7, 2019, just four days later, a CVSH legacy governmental affairs employee informed Neerman that she would be "taking over the Louisiana jurisdiction" and that his services would no longer be needed. Notwithstanding Mr. Neerman's position being reorganized under different leadership, losing three of his direct superiors and having substantial portions of his job responsibilities threatened and/or removed (without cause), CVSH repeatedly insisted that Neerman sign the RCA, threatening termination if he failed or refused to do so.

In addition to his concerns about executing a covenant not to compete while simultaneously experiencing a constructive termination (and watching fellow Aetna legacy employees become separate from their employment), Mr. Neerman also had serious concerns about the terms of the RCA itself. For example, the RCA does not specifically state that continued employment with CVSH is dependent upon the employee signing the RCA. Yet, CVSH management regularly communicated to Neerman the opposite. In addition, the RCA purports to limit Neerman from engaging in certain employment throughout the entire United States and elsewhere. In fact, despite the obvious specific geographic limits of Mr. Neerman's employment with CVSH, the RCA had virtually no geographic limit. Yet, when Mr. Neerman raised his concerns to CVSH management, his concerns were dismissed and CVSH management, including human resources and CVSH legal counsel, insisted that Neerman sign the document or risk termination. More importantly, on June 11, 2019 (3 days prior to CVSH-imposed deadline), when Neerman again questioned the RCA, CVSH Vice President of National Governmental Affairs represented to Mr. Neerman and other employees on the conference call that all of Neerman's colleagues had been presented with the same RCA and *all employees had already executed the RCA*, facts Neerman later learned were false.

Over the course of days and months, CVSH made a concerted and intentional effort to reduce or eliminate Mr. Neerman's position, while also attempting to coerce Neerman into signing an RCA which would offer CVSH protection from his termination. Undoubtedly, CVSH's reorganization, consolidation of management and accompanying RCA were part of a premeditated plan associated with the Aetna acquisition, for which substantial internal documentation exists. Furthermore, based

on my firm's investigation into this matter, we do not believe Mr. Neerman is the only CVSH employee to have been influenced by such coercion and misrepresentations. The circumstances leading to Neerman's termination appear to give rise to tort claims on behalf of Neerman and other similarly situated CVSH employees. These particular circumstances may also be relevant to the issues being considered by U.S. District Court for the District of Columbia, including whether the conditions of CVSH's acquisition are sufficient to ensure competition within the healthcare industry. Certainly, CVSH's unconscionable RCA imposed upon Aetna employees (prior to their separation) is relevant to this issue. After his termination, CVSH and/or Aetna employees have clumsily attempted to suggest Neerman voluntarily resigned from his position. Yet, multiple CVSH and/or Aetna human resource representatives have also represented that Neerman was "terminated" and Aetna has provided Neerman with multiple documents which explicitly describe Neerman's separation of employment as "termination."

According to Aetna's "Since You Are Leaving Aetna" and referenced Summary Plan Description (the "Aetna Plan"), employees who are terminated due to "job elimination" (defined as termination of employment due to "reengineering, reorganization and/or staff reduction") are entitled to certain ongoing salary and benefits. In this case, the Aetna Plan would entitle Neerman to receive to the following separation benefits:

- 9 weeks of salary continuation
- 17 weeks of severance pay
- Access to Aetna outplacement services
- Continuation of regular employee benefits during the 9 weeks of salary continuation
- Continuation of medical, dental and vision coverage at subsidized COBRA rates

In addition, since Mr. Neerman's termination occurred within one year of a Change in Control of the company, the Aetna Plan would also entitle Neerman to additional benefits:

- 9 additional weeks of salary continuation
- 17 additional weeks of severance pay

As you are aware, at the time of Mr. Neerman's termination, Neerman had a base salary of $181,178 per year. Thus, as a result of his termination, the Aetna Plan requires CVSH and/or Aetna to pay the following in continued salary and severance pay:

- $31,357.73 (9 weeks of continued salary)
- $59,231.27 (severance pay - 17 weeks of salary)
- $31,357.73 (9 additional weeks of continued salary due to Change in Control)
- $59,231.27 (additional severance pay - 17 additional weeks of salary due to Change in Control)

In addition, the Aetna Plan also requires CVSH and/or Aetna to honor their additional benefit obligations as described above, the value of which is estimated to be more than $15,000.

Mr. Neerman has also had to retain the undersigned counsel in order to enforce his contractual rights, and therefore, please consider this letter a demand for payment of reasonable attorney's fees and expenses associated with the same. To date, the attorney's fees and expenses associated with the investigation and presentation of the forgoing claim totals $15,000.

By way of compromise, Mr. Neerman hereby extends an offer to fully and finally release all claims against CVSH, Aetna and their insurers in exchange for payment of $250,000, subject to Neerman signing mutually agreeable confidentiality, non-disparagement and non-disclosure agreements.  This offer may be accepted by responding in writing to the undersigned counsel at the address on the enclosed letter.  This offer shall remain open for fourteen (14) days, at which time it will expire.

Please forward this demand to your legal counsel and to your insurers.   All future correspondence concerning Mr. Neerman concerning the termination of his employment and the above-referenced claims should be directed to my office.  If you have questions or concerns, or would like to discuss this matter further, do not hesitate to contact my office.

Very truly yours,

JOHNSON HOBBS SQUIRES, LLP

By:

Ryan C. Johnson

cc:     Client

4

# EXHIBIT 4

# Johnson | Hobbs | Squires
### A Limited Liability Partnership
##### WWW.JHSFIRM.COM

**RYAN C. JOHNSON**
rjohnson@jhsfirm.com

December 13, 2019

*CMRRR AND U. S. MAIL*
Keith Christensen
Senior Vice President of Human Resources
CVS Pharmacy, Inc. d/b/a CVS Health
One CVS Drive
Woonsocket, Rhode Island 02895

     Re:    Termination of Employment of Jason Neerman, Unconscionable Restrictive Covenant Agreement, Misrepresentation, Fraud, Breach of Contract and REQUEST FOR APPEAL

             THIS PROPOSAL IS CONFIDENTIAL IN NATURE AND IS INTENDED AS AN OFFER TO COMPROMISE OR OF SETTLEMENT UNDER TEXAS RULE OF EVIDENCE 408.

Mr. Christensen:

     As you know, my firm has been retained by Jason Neerman ("Mr. Neerman" or "Neerman") to investigate the circumstances surrounding his termination from employment from CVS Health Corp. ("CVSH") and/or Aetna, Inc. ("Aetna"). This letter is written in response to the October 28, 2019 letter from Candace Joseph, CVHS's delegate of the Administrator of the Aetna, Inc. Job Elimination Benefits Plan (the "Plan") wherein Ms. Joseph notified Neerman of the Administrator's denial (the "Denial") of Neerman's claim for benefits. The purpose of this letter is to **APPEAL** the Decision of CVSH to deny Neerman severance (and other) benefits under the Plan and to otherwise reiterate Neerman's demand for payment for salary and benefits due Mr. Neerman as a result of the systematic elimination of his position at CVSH and/or Aetna. Please consider this letter the formal **APPEAL** of CVSH's decision to deny Neerman benefits under the Plan.

     With respect to the Denial, Neerman would request that the Administrator consider the following information which was IMPROPERLY STATED or OMITTED from as part of the Record before the Administrator:

- **Item (ii)** of the Administrator's Record incorrectly states that "**because of the level of Mr. Neerman's position, <u>he was expected to sign a restrictive covenant agreement (and "RCA") as a condition of his continued employment.</u>**" This statement ignores crucial documents curiously absent from the Administrator's Record. For example, on or around April 3, 2019, CVSH sent Neerman a Memorandum accompanied by the RCA, requesting his signature. The CVSH Memo stated as follows (entire text of Memo shown below, emphasis added):

**MEMO**

As a condition of accepting your 2019 equity award, you are required to review and electronically sign a restrictive covenant agreement (RCA).

You will not be able to accept your RSU in E*TRADE until you have signed your RCA. The deadline for doing so is 11:59 p.m. on June 14, 2019. If you have questions, please contact your Human Resources Business Partner.

- The Record should include a copy of the CVSH MEMO and reflect that the MEMO does NOT state that Neerman's continued employment is conditioned upon execution of the RCA or otherwise indicate that Neerman's employment would be terminated absent his signature by June 14. Instead, the MEMO states only that the "2019 equity award" is conditioned upon acceptance and execution of the RCA.

- The Record should also acknowledge and reflect the applicable language of the RCA. For example, the RCA describes in detail the consideration offered by CVSH in exchange for execution of the RCA. In Paragraph 1, titled "**Consideration for Agreement**," the RCA fully describes the consideration CVHS offered in exchange for Neerman's execution of the RCA. *See* RCA ¶1. According to Paragraph 1, the only new consideration offered to Neerman in exchange for executing the RCA was an "**equity award**," which the RCA described as "**contingent on the execution of this Agreement.**" Notably, Neerman's continued employment with CVSH was *not* identified as consideration for the RCA nor included as "contingent on the execution of this Agreement." As the drafter of the RCA, CVSH could have included Neerman's "continued employment" as consideration for executing the RCA, which is a condition sometimes referenced in restrictive covenant agreements, but in this case CVSH failed to do so.

- The Record should also acknowledge and reflect that the plain language of the RCA contradicts the Administrator's initial Determination. Contrary to the Administrator's Record, the RCA (drafted by CVSH) explicitly states "**[t]his Agreement [RCA] does not create an obligation on the Corporation [CVSH] or any other person or entity to continue my [Neeman's] employment.**" *See* RCA ¶10 (entitled "**No Right of Continued Employment**"). How can the Administrator find that CVSH made execution of the RCA by Neerman a "condition of continued employment", when the RCA, by its own terms, "does not create an obligation on [CVSH]… to continue [Neeman's] employment."? Neerman respectfully requests that the Administrator include the above-referenced CVSH MEMO and the plain language of the RCA in the Record, revise its Determination of the Claim and withdraw its Denial of Benefits immediately.

2

- **Item (iii)** of the Administrator's Record states that Neerman was told by CVSH (via phone and email) that execution of the RCA was a "**condition of continued employment**." Yet, the terms of the RCA (drafted by CVSH) render all oral or written discussions (or understandings) between the parties as meaningless and without effect. Paragraph 12 of the RCA plainly states "**the RCA set[s] forth the entire agreement between the parties hereto and fully supercedes any and all prior and/or supplemental understandings, whether written or oral, between the parties concerning the subject matter of this Agreement**… **I agree and acknowledge that I have not relied on any representations, promises or agreements of any kind in connection with my decision to accept the terms of this Agreement, except for the representations, promises and agreements herein.**" *See* RCA ¶12. Thus, contrary to the Administrator's Record (and Determination), the express terms of the RCA (not oral statements or understandings of the parties) control this issue. In short, the express terms of the RCA, not any oral or written discussions (or understandings), are controlling on "the subject matter of this [RCA] Agreement." Neerman respectfully requests that the Record acknowledge and reflect that the RCA does not make continued employment contingent upon execution of the agreement and that the language of the RCA, not any oral or written discussions, is controlling.

- **Item (iv)** of the Administrator's Record states that Human Resources and [Neerman's] manager had phone conversations with Mr. Neerman to provide him an opportunity to discuss his concerns with signing the RCA…" Yet, the Administrator's Record fails to include any reference to Neerman's stated concerns. For example, Neerman disclosed to CVSH that he'd been provided conflicting information concerning the RCA – i.e. Neerman had received conflicting reports as to whether execution of the RCA was a condition of his continued employment. Neerman pointed out to HR that the plain language of the RCA did not contain such a condition and that the terms of the RCA were supposed to control the dealings between the parties on the issue. Neerman received no coherent response to this concern and CVSH never amended the RCA to include continued employment as consideration for execution of the RCA. In sum, Neerman received conflicting information concerning whether his employment was conditioned upon executing the RCA and, despite his requests for clarification, CVSH never amended the RCA on this issue.

In its Determination, the Administrator and/or CVSH appears to suggest that Neerman's termination is not a "Covered Termination of Employment" under the Plan because Neerman purportedly refused to comply with a job condition. Section 1.11(g) (and Amendment No. 2) to the Plan states that an employee shall not have a Covered Termination of Employment where the employee "refus[es] or fail[s] to comply with job conditions, as set forth by the Employer from time to time (including changes in work schedules or work days)." Based on the language of Section 1.11 (and the Amendment), sub-part (g) cannot be reasonably interpreted to include execution of an RCA tied to an equity bonus and/or award. Both Section 1.11 and Amendment No. 2 specifically refer to an employee's failure to comply with work schedules, which is clearly the intended scope of sub-part (g). Furthermore, where is the Administrator's evidence supporting the finding that CVSH set forth a "job condition" on Neerman? The RCA speaks for itself. The RCA does not indicate that Neerman's signature was a required job condition (see above). In addition, Neerman did not receive a single document, acknowledgement form, job description, memorandum or report stating that execution of the RCA was a job condition. Again, the fact that one or more CVSH employees may

have said "you need to sign this or else you'll be fired" is irrelevant.  The express terms of the RCA preclude any other oral or written understandings or agreements between the parties, affirmatively requiring Neerman to disclaim any reliance on CVSH representations related to the same.

In addition, the Administrator wholly failed to address Neerman's claim for employee benefits under Section 4.3(c) of the Plan.  As you know, Section 4.3(c) was amended in Amendment No. 19 to state, in relevant part,

> **In the event of a Change in Control, <u>the following Employees shall be paid an additional one (1) Week's Pay for each week of the 9 Week Salary Continuation Period, and if applicable, Severance Period</u>:**
>
> **<u>An Employee whose termination is related to the Company's [Aetna] integration with CVS Health Corporation</u> and who has a Commencement Date within the 12-month period that begins one year following the Change in Control and ends two years following the Change in Control, if the Employee was employed in one of the following departments on either the date of the Change in Control or the Employee's date of termination… Corporate Affairs (including but not limited to… Government Relations)…**

*See* RCA Amendment No. 19.  Thus, in order to be entitled to the above-referenced benefits, the subject employee's termination must simply be "<u>**related to [Aetna's] integration with CVS Health Corporation.**</u>"  Notably, the application of Section 4.3(c) does *not* require that the employee experience a much more narrowly defined "Covered Termination of Employment," but rather their termination simply must be "related to [Aetna's] integration with CVS Health Corporation."  To the extent there is any conflict, Section 4.3 clearly states "**the provisions of this Section 4.3 will supercede any provision of the Plan to the contrary,**" and therefore, any exclusions contained in the definition of "Covered Termination of Employment, would not preclude an employee from receiving benefits under Section 4.3.  Thus, the Administrator's entire discussion and application of the "Covered Termination of Employment" definition is irrelevant to employee benefits under Section 4.3 of the Plan.

As to benefits under Section 4.3 of the Plan, the issue is *not* whether Neerman falls under the definition of a "Covered Termination of Employment," but rather whether Neerman's termination was more generally "related to Aetna's integration with CVSH.."  The Administrator wholly failed to address this issue in the Record or in its Determination of Claim. The undisputed facts, however, indicate that Neerman's termination was in all ways related to Aetna's integration with CVSH.  For example, in his employment with Aetna, Neerman had never been required to execute an RCA. To the contrary, CVSH, on information and belief, had a prior practice of requiring its own legacy employees to execute RCA's as a condition of continued employment.  The RCA was presented to Neerman by CVSH just a few months after the Change in Control while Neerman (and the rest of the Governmental Affairs Department) was being integrated into the CVSH corporate structure.  In addition, the RCA provides that, as additional consideration for the Agreement, CVSH was providing Neerman with "Confidential Information and/or access to [CVSH]'s customers and clients…" which, presumably, Neerman would not have had access to but for Aetna's integration with CVSH.  If, in fact, CVSH intended to make execution of the RCA a "condition of continued employment," as stated

by the Administrator, then imposing such a condition on an Aetna-legacy employees would clearly be "related to Aetna's integration with CVSH." For this and related reasons, Mr. Neerman respectfully requests that the Administrator add the following facts to the Record:

- Neerman had never been required, or asked, to execute a restrictive covenant agreement while employed by Aetna;

- Prior to the Change in Control, CVSH had a practice of conditioning the continued employment of certain employees, including those at Neerman's level, upon execution of an RCA;

- The RCA was presented by CVSH to Neerman within six months of the Change in Control; and

- The RCA states that CVSH was providing "Confidential Information and/or access to [CVSH] customers and clients and the opportunity to develop and maintain relationships and goodwill with them" as consideration to Neerman in exchange for execution of the RCA.

In addition to the foregoing omissions from the Record, the Administrator's Record also contains no references or description of the systemic removal of Aetna-legacy employees within the Governmental Affairs Department and removal of substantially all job responsibilities from Neerman following the Change in Control. By way of reminder, in Neerman's July 29, 2019 Claim for Severance Benefits, Neerman made the following allegations:

> **CVSH has implemented a complete reorganization of its department of governmental affairs since its recent acquisition of Aetna, including the system ic removal of Aetna-legacy upper management within this organization. Over the past six months, each of Mr. Neerman's Aetna-legacy superiors have been separated from their employment with CVSH. Prior to his recent termination, Neerman was placed under the supervision of a CVSH-legacy employee who was assigned the same job responsibility as Neerman…**

> **On or about November 28, 2018, CVSH completed the acquisition of Aetna. Shortly thereafter, the State and Federal Governmental Affairs Departments were "lifted and shifted" from the Aetna organization to the Office of General Counsel for CVSH. Over the ensuing months, nearly all of the Aetna-legacy leadership (including Steve Kelmar, Jim Ricciuti and Elena Butkus) were separated from their employment from CVSH. Likewise, numerous Aetna-legacy employees reporting to the above-referenced leadership were also separated from their employment during this time period…**

> **On or about May 3, 2019, Mr. Neerman was informed by CVSH Senior Vice President of Governmental Affairs and Vice President of National Affairs of a "re-alignment" of resources and new reporting structure. According to**

5

**CVSH, Neerman would now report to a CVSH-legacy employee who was also responsible for the same state (Texas) as Neerman and share responsibility for Oklahoma and Louisiana with another CVSH-legacy employee until the end of the current legislative session and/or acts of procurements. Yet, CVSH senior management also represented that it was the intent of CVSH State Governmental Affairs to consolidate the workforce into single representation in each jurisdiction, including the states of Texas, Oklahoma and Louisiana. On May 7, 2019, just four days later, a CVSH-legacy governmental affairs employee informed Neerman that she would be "taking over the Louisiana jurisdiction" and that his services would no longer be needed.**

If taken as true, Neerman's allegations represent a clear indication that CVSH systemically eliminated Neerman's employment through its reorganization of the Aetna-legacy Governmental Affairs Department, entitling Neerman to severance and other benefits under the Plan. However, it appears that the Administrator simply ignored, or glossed over, these allegations. Curiously, the Administrator's Determination of Claim includes the following vague statement (verbatim) concerning CVSH's reorganization (the "Reorganization"), which are unsupported in the current Record:

**Although there were changes in management/personnel and Mr. Neerman's duties had evolved over time, Mr. Neerman's job was not eliminated as a result of re-engineering, reorganization or staff reduction efforts.**

Again, the terms of Job Elimination Benefits Plan (and the Since You Are Leaving Aetna) provide that an employee may be entitled to benefits where their job was eliminated – meaning "termination of your employment with the company because of re-engineering, reorganization and/or staff reduction." Yet, the Administrator failed to include a single paragraph, sentence, or verified fact in its Record concerning the referenced "changes in management/personnel" or "evolution" of Neerman's job duties referenced in its Determination of Claim. Neerman made specific allegations, which could be easily verified by CVSH and included as part of the Administrator's Record. The Administrator failed to include any facts supporting its vague references to "change in management/personnel" and the "evolution" of Neerman's duties. Nor did the Administrator include any facts concerning what person(s) were ultimately assigned Neerman's duties, which would be highly relevant to any determination of the claim. Instead, the Administrator failed to include any facts in the Record concerning the reorganization of the Aetna Governmental Affairs Department, separation of employment of Aetna-legacy management and removal of substantially all Neerman's job responsibilities prior to July 14, 2019.

In light of the Administrator's failure to include *any* facts concerning the CVSH Reorganization in the Record, Mr. Neerman respectfully requests that the Administrator add the following facts to the Record:

- On or about November 28, 2018, CVSH completed its acquisition of Aetna and/or the change in control (the "Change in Control") was finalized.

▪ At the time of the Change in Control, Neerman held a position as a Senior Government Relations Specialist in Aetna's Governmental Affairs Department.

▪ At the time of the Change in Control, Neerman was assigned to the following state legislative jurisdictions: Louisiana, New Mexico, Oklahoma and Texas.

▪ In or around December 2018, Aetna's State and Governmental Affairs Departments were "lifted and shifted" from the Aetna organization to the Office of General Counsel for CVSH.

▪ In or around December 2018, in connection with the reorganization, Aetna Executive Vice President and Chief of Staff, Steve Kelmar, was separated from his employment. Kelmar was an Aetna-legacy employee responsible for overseeing Corporate Affairs and Governmental Affairs. Kelmar was the highest-ranking Aetna official with a responsibility for the Governmental Affairs Department.

▪ On or about December 14, 2018, in connection with the reorganization, Jim Ricciuti's position was eliminated or otherwise transferred to a CVSH-legacy employee. Ricciuti was an Aetna-legacy employee and was the supervisor of Mr. Neerman's direct supervisor in Aetna's Department of Governmental Affairs. Prior to his separation from employment, Ricciuti reported directly to Steve Kelmar.

▪ On or about May 3, 2019, Elena Butkus's position, Head of State Government Affairs for Aetna, was eliminated or otherwise transferred to a CVSH-legacy employee. Butkus was an Aetna-legacy employee and was Mr. Neerman's direct supervisor. Prior to her separation from employment, Butkus reported directly to Jim Ricciuti.

▪ On or about May 3, 2019, Neerman was contacted by CVSH Senior Vice President of Government Affairs, Melissa Schulman, and Vice President of National Governmental Affairs, Louis Finkle, to announce a "realignment" of the Aetna Governmental Affairs Department. Neerman was informed that three of his four assigned jurisdictions were being shared by a CVSH-legacy counterpart. Neerman's largest jurisdiction, Texas, was being shared by Neerman's new CVSH-legacy supervisor. CVSH also announced its intent to move all jurisdictions to single representation following the close of the 2019 legislative sessions.

▪ On or about May 7, 2019, Neerman was informed by a CVSH-legacy counterpart that she's been assigned one or more of his jurisdictions and that Neerman's services would no longer be required by CVSH within the jurisdiction.

▪ By June 6, 2019, Neerman's former position at Aetna had effectively been eliminated through a reorganization associated with the Change in Control.

▪ On June 11, 2019, Neerman requested clarification on the terms of the RCA, expressing his discomfort with the contradicting statements being made by CVSH. In response, Vice President of National Governmental Affairs, Louise Finkle, encouraged Neerman to execute the RCA, stating that "all of your colleagues have already signed the RCA". Finkle's

representation was patently false.  Neerman would learn that not all of Neerman's colleagues had been presented with the RCA and not all colleagues had signed as represented by Finkle.

▪ On or about June 25, 2019, Neerman was informed that his job at CVSH had been eliminated and/or terminated effective July 5, 2019.  Neerman's employment ended within one year of the Change in Control, as that term is defined in the Plan.

In sum, CVSH presented Neerman with the RCA and requested and/or required his signature where each of his Aetna-legacy superiors had been separated from their employment and substantially all Neerman's job responsibilities had been eliminated and/or transferred to a CVSH-legacy employee. The circumstances under which Neerman was required to execute the RCA should be particularly relevant to the Administrator's inquiry in light of the existing law of Rhode Island on the subject, where covenants not to compete procured by employers "in bad faith" are unenforceable.  Therefore, the Record should also reflect the following facts:

▪ The RCA prescribes the application of Rhode Island law.  *See* RCA ¶19.

▪ Rhode Island courts do not enforce a covenant not to compete where it is procured through "bad faith" on the part of the employer.  *See, e.g., Durapin, Inc. v. American Products, Inc.*, 559 A.2d 1051 (R.I. 1989).

▪ CVSH pressured Neerman to execute an RCA *only after*

  o CVSH had transferred the Aetna-legacy Governmental Affairs Department to the Office of General Counsel for CVSH,
  o CVSH separated from employment each of Neerman's Aetna-legacy superiors,
  o CVSH transferred Neerman's job responsibilities to one or more CVSH-legacy employees, and
  o CVSH announced its intent to move to single representation for every jurisdiction.[1]

So while the Administrator's Determination of Claim asserts that Neerman "**voluntarily chose to leave the Company by knowingly and affirmatively refusing to comply with a job condition**," most reasonable minds would agree that requiring the signature of an employee under these circumstances is a clear indicator of "bad faith."  In any event, the above-referenced facts must be included in the Administrator's Record.

The Record should also reflect the following facts:

▪ There is no evidence Neerman was ever presented with any RCA or Acknowledgement Form which indicated that his signature was a required condition of continued employment.  The RCA speaks for itself and, according to its terms, is meant to stand alone.

---

[1] Following the Aetna acquisition, many of the state jurisdictions (e.g. TX, OK, LA, etc.) had double-representation (i.e. both a CVSH-legacy and Aetna-legacy employee responsible for covering the jurisdiction).  CVSH's announcement of a "move to single representation" meant that these overlapping positions would be eliminated as part of the reorganization.

- There is no evidence that CVSH ever made any attempt to (1) document Neerman's employment file or (2) apply any progressive disciplinary policies or procedures to Neerman for his failure or refusal to execute the RCA.   Neerman was never written up, never coached and never disciplined for his supposed "refusal to comply with a job condition."

- Neerman's job description or duties do not expressly require Neerman to execute restrictive covenant agreements.

- Neerman was never presented with any document meant for his signature which stated that the RCA was a required condition of his continued employment.

- Neerman should have been able to rely on the express terms of the RCA (and accompanying CVSH MEMO), which do not make execution of the RCA a condition of continued employment.

- RCA, by its own terms, provides that "**[t]his Agreement [RCA] does not create an obligation on the Corporation [CVSH] or any other person or entity to continue my [Neeman's] employment**." *See* RCA ¶10 (entitled "**No Right of Continued Employment**").

- The RCA, by its own terms, provides that "**the RCA set[s] forth the entire agreement between the parties hereto and fully supercedes any and all prior and/or supplemental understandings, whether written or oral, between the parties concerning the subject matter of this Agreement... I agree and acknowledge that I have not relied on any representations, promises or agreements of any kind in connection with my decision to accept the terms of this Agreement, except for the representations, promises and agreements herein**." *See* RCA ¶12 (entitled "**Entire Agreement/No Reliance/No Modifications**").

Finally, according to the Denial, Mr. Neerman is entitled to request and receive (free of charge) "**copies of all documents, records, and other information relevant to his claim for benefits.**" To this end, Mr. Neerman requests that CVSH and/or the Administrator provide Neerman with the following documents and information:

- All documents and communications contained in the Record before the Administrator and/or which have been reviewed by the Administrator in reaching its original Determination of Claim;

- All documents and communications upon which the Administrator's Determination of Claim is based and/or which are relied upon by the Administrator in making its Determination of Claim;

- A copy of the e-mail sent to Neerman on April 3, 2019 from "CVS Health Equity Administration 2019 [mailto:echosign@echosign.com]" which contained the attached

CVS Health MEMO, the RCA and a docusign message and/or instructions related to the same;

- All documents and communications, including without limitation e-mails, memoranda, power point presentations, provided to CVSH management concerning any instructions provided to CVSH management or human resources personnel regarding the RCA or information to communicate to employees concerning the RCA;

- All documents and communications provided to Neerman in connection with his termination and/or separation from employment;

- Neerman's complete employment file;

- All documents and communications concerning any disciplinary action taken against Neerman at any time during his employment with Aetna and/or CVSH;

- A copy of the restrictive covenant agreement ("RCA") CVSH contends was provided to Neerman and referenced in the October 28, 2019 Denial letter;

- All documents and communications indicating or suggesting that executing the RCA was a condition of Neerman's employment;

- All documents and communications stating, indicating or suggesting that any equity awards were conditioned upon Neerman's execution of the RCA;

- All draft versions of the RCA, including any red-line versions of the RCA;

- All documents or communications provided to Neerman which indicate or suggest that executing the RCA was a condition of Neerman's employment;

- All CVSH progressive discipline policies or procedures applicable during the relevant time period;

- All documents and communications concerning CVSH's re-organization of the Aetna Governmental Affairs Department, including without limitation all documents and communications associated with CVSH's May 3 announcements of the same;

- A current organizational chart identifying the person(s) at CVSH within the Governmental Affairs Department who are currently assigned to the following state legislative jurisdictions: Louisiana, New Mexico, Oklahoma and Texas, as well as the supervisor(s), director(s) and vice president(s) of the same; and

- A list of the names of CVSH employees within the Governmental Affairs Department who are currently assigned to the following state legislative jurisdictions: Louisiana, New Mexico, Oklahoma and Texas.

Neerman reserves the right to submit additional documents, information and argument in support of his APPEAL upon receipt of the requested documents.

      If you have questions or concerns, or would like to discuss this matter further, do not hesitate to contact my office.

                      Very truly yours,

                      JOHNSON HOBBS SQUIRES, LLP

By:

                      Ryan C. Johnson

cc:    Client

# EXHIBIT 5

# JOHNSON | HOBBS | SQUIRES
## A LIMITED LIABILITY PARTNERSHIP
### WWW.JHSFIRM.COM

RYAN C. JOHNSON
rjohnson@jhsfirm.com

March 11, 2020

*VIA E-MAIL, CMRRR AND U. S. MAIL*
Keith Christensen
Senior Vice President of Human Resources
CVS Pharmacy, Inc. d/b/a CVS Health
One CVS Drive
Woonsocket, Rhode Island 02895

> Re:   Termination of Employment of Jason Neerman, Unconscionable Restrictive Covenant Agreement, Misrepresentation, Fraud, Breach of Contract and REQUEST FOR APPEAL
>
> THIS PROPOSAL IS CONFIDENTIAL IN NATURE AND IS INTENDED AS AN OFFER TO COMPROMISE OR OF SETTLEMENT UNDER TEXAS RULE OF EVIDENCE 408.

Mr. Christensen:

This letter is meant to follow up on your February 11, 2020 email, accompanied by CVSH's production of additional documents (the "Additional Documents"). In reviewing CVSH's response and Additional Documents, it is clear that

> (1)   **The Additional Documents (previously undisclosed) unquestionably support Neerman's claim**,
>
> (2)   **The Additional Documents contain FACTS which were not included in the RECORD by the Administrator**, and
>
> (3)   **CVSH continues to withhold additional, relevant documents and/or information, the absence of which supports Neerman's claim**.

In the Additional Documents, CVSH produced an April 2, 2019 E-Mail RE 2019 Equity Award Conversion (the "Equity Award Email"), along with an attached MEMO and Restricted Covenant Agreement ("RCA"). On its face, the Equity Award Email appears to have been sent to all non-VP CVSH employees entitled to receive an equity award. And while the Equity Award Email does indicate that the award was conditioned upon execution of the RCA, the Email references no other terms or conditions. Likewise, the MEMO attached to the Equity Award Email also includes the single condition of acceptance – i.e. execution of the RCA. Neither the Equity Award Email, nor the MEMO indicate that execution of the RCA was required for continued employment. Apparently, CVSH has no record of ever communicating to the equity award group that their continued employment was conditioned upon signing the RCA, which is significant and should have been included in the Administrator's RECORD. Further, the fact that CVSH did communicate to the

equity award group that their equity award was conditioned upon signing the RCA is equally significant and should also have been included in the Administrator's RECORD.

In the Additional Documents, CVSH also produced for the first time an excerpt from a PowerPoint Presentation entitled "**CVSHealth 2019 Long-Term Incentive Program Overview**" (the "Incentive Overview Presentation").[1]  *See* February 11, 2020 Production (pp.42-43).  Yet, CVSH produced no evidence of when the Presentation was created (which would be in the original document properties) or that the Incentive Overview Presentation was ever sent to any CVSH employees.  Nonetheless, the Incentive Overview Presentation is a significant document which should have been included in the original RECORD before the Administrator, as the language contained in the Presentation is dispositive on at least one issue before the Administrator.  By way of explanation, the Incentive Overview Presentation is the only CVSH document produced by CVSH which states that CVSH employees must accept the RCA "**to avoid separation from employment,**" stating in relevant part:

---

- • **You must accept the RCA for the equity awards to be issued and viewable within E*TRADE**
- • **You must accept the RCA by June 14, 2019 to avoid separation from employment**
- • **A memo containing details and RCA acceptance information will be sent to all colleagues receiving equity awards**

---

As seen above, the Incentive Overview Presentation excerpt indicates that there are two  conditional terms to execution of the RCA: (1) the equity award, and (2) continued employment.  The Presentation even indicates that a "**memo containing details and RCA acceptance information will be sent all colleagues receiving equity awards.**"   Importantly, the Incentive Overview Presentation also contains language concerning any conflicts between the Presentation and the terms of the agreement, stating:

---

*This information is a summary of the Long-term Incentive Program.  Refer to your award agreement(s) for a comprehensive description of your terms.  If there is any conflict between those terms and what is presented herein, your award document(s) prevails.*

---

 The "award agreement" and/or "award document(s)" clearly refers to the Equity Award Email, the MEMO and the RCA itself, all of which were sent to Neerman (and the other eligible employees).  The Email, MEMO and RCA undisputedly state that acceptance (execution) of the RCA was required to receive the equity award.  However, unlike the Incentive Overview Presentation, the Email, MEMO and RCA do not indicate that acceptance of the RCA was required to avoid separation from employment, as seen below:

---

[1] Unfortunately, CVSH produced only the cover page and a single substantive page (page 10) of the Incentive Program Overview, and therefore, Neerman has been unfairly deprived of the opportunity to review the entire Presentation.  In addition, the Incentive Overview Presentation excerpt was not included in CVSH's Overview of Communications with Jason Neerman, meaning that that the Presentation was presumably never provided to Neerman.

2

The Incentive Overview Presentation clearly states that any conflicts in terms are resolved in favor of the award documents, and therefore, non-VP equity award participants' continued employment was by its own terms <u>not</u> conditioned upon signing the RCA. If CVSH maintains that Neerman's employment was conditioned upon signing the RCA, then CVSH's position is inconsistent with its own documents and more consistent with CVSH's overall reorganization efforts. The Administrator should have included the above-referenced conflicts language from the Incentive Overview Presentation excerpt in the RECORD. For this reason, Neerman requests that the following DOCUMENTS, FACTS and/or FINDINGS be included in the RECORD before the Administrator and otherwise considered on APPEAL:

- **CVSH sent an email to non-VP employees eligible for equity awards, including Neerman, on April 2, 2019** (the "Equity Award Email");

- **The Equity Award Email contained a detailed description of the terms and conditions of the CVSH equity award**;

- **The Equity Award Email's description of terms and conditions included the requirement that a restrictive covenant agreement ("RCA") must be signed in order to receive the equity award**;

- **The Equity Award's email description of terms and conditions did <u>not</u> include any suggestion that the employees' continued employment was conditioned upon execution of the RCA**;

- **The Equity Award Email had a MEMO and the Restrictive Covenant Agreement attached**;

- **The MEMO and RCA accompanying the Equity Award email did not include any suggestion that the employees' continued employment was conditioned upon execution of the RCA**;

- **CVSH has a PowerPoint presentation entitled "2019 Long-Term Incentive Program Overview" (the "Incentive Overview Presentation") which purports to contain "a summary of the Long-Term Incentive Program";**

- **CVSH only produced the cover page and page 10 of the Incentive Overview Presentation in response to Neerman's request for documents, but intentionally withheld the bulk of the presentation;**

- **The Incentive Overview Presentation states that employees must accept the RCA for the equity awards to be issued;**

- **The Incentive Overview Presentation states that employees must accept the RCA by June 14, 2019 to avoid separation from employment;**

- **The Incentive Overview Presentation specifically describes how employees are to interpret any conflicts between the Presentation on the one hand and the MEMO and RCA on the other hand, stating in relevant part, "*This information is a summary of the Long-term Incentive Program.  Refer to you award agreement(s) for a comprehensive description of your terms.  If there is any conflict between those terms an what is presented herein, your award document(s) prevails.*"**

- **The description of the terms of the Long-Term Incentive Program in the Equity Award E-Mail, MEMO and RCA conflict with the Incentive Overview Presentation insomuch as the E-Mail, MEMO and RCA do not make continued employment conditioned upon signing the RCA;**

- **Where a conflict exists between the information concerning the Long-Term Incentive Program provided in the Incentive Overview Presentation and the MEMO and RCA, the MEMO and RCA prevails;**

- **There is no evidence presented by CVSH as to when the Incentive Overview Presentation was created (or modified) despite CVSH having the ability to determine the same;**

- **There is no evidence presented by CVSH that the Incentive Overview Presentation was ever presented to non-VP employees eligible for equity awards, including Neerman, despite CVSH having the ability to provide such documents an information;**

- **There is no evidence presented by CVSH that the Incentive Overview Presentation was created or disseminated prior to the April 2, 2019 Equity Award Email, despite CVSH having the ability to provide such documents an information;** and

- **Even if the Incentive Overview Presentation was presented to non-VP employees eligible for equity awards, including Neerman, the Presentation's description of the terms of the RCA and/or the Long-Term Incentive Program do *not* control over the RCA itself.**

CVSH's initial communications to Neerman were also consistent with the Equity Award Email, MEMO and RCA, giving no indication that execution of the RCA was a condition of continued employment.  In fact, between the dates of April 2, 2019 (Equity Award Email) and June 10, 2019, there is NO EVIDENCE of any communication to Neerman (verbal, written or otherwise) that the execution of the RCA was required for continued employment.  To the contrary, the only written communications produced by CVSH during this time period indicate the opposite.  For example, the HR Business Representative for Governmental Affairs, Vered Becker, emailed Neerman on June 3, 2019 stating as follows:

---

**On Jun 3, 2019, at 07:57, Becker, Vered <Vered.Becker@cvshealth.com> wrote:**

Hi Jason,

I am following up with you since you haven't yet signed your restrictive covenant agreement (RCA) that was sent to you in late April. As you know, as a condition of accepting your 2019 equity award you are required to review and electronically sign the RCA by end of day on June 14, 2019.

I am touching base with you to make sure that you don't miss this deadline.

Let me know if you have any questions.

Thanks,

Vered

---

Here, eleven days prior to CVSH's self-imposed deadline, Vered Becker reminds Neerman that his equity award is conditioned upon signing the RCA, but makes no mention of the fact that Neerman will be terminated if he fails or refuses to sign the RCA. Of course, Becker's June 3 e-mail is entirely consistent with every communication CVSH made to Neerman over the previous sixty days.  More importantly, Becker's e-mail was consistent with RCA itself.

Likewise, on June 10, 2019 (seven days later), Allen Horne, CVSH VP of Governmental Affairs and Neerman's immediate supervisor, met with Neerman to discuss the RCA and his role at CVSH.  In describing the discussion to CVSH HR, Horne acknowledges not knowing that Neerman "**not signing the RCA would lead to termination of his employment,**" stating:

**From:** Horne, Allen K.
**Sent:** Monday, June 10, 2019 5:01 PM
**To:** Finkel, Louis A <Louis.Finkel@CVSHealth.com>; McClure, Marianne <Marianne.Mcclure@CVSHealth.com>; Schulman, Melissa A. <Melissa.Schulman@cvshealth.com>
**Subject:** RE: Jason Neerman - RCA

I did have a 1-1 with Jason today but I am not sure I was able to give him the clarity he wanted.  We have two persons working in Louisiana but plan to have 1 person at some point and Jason wanted to know if it would be him who has LA and when the decisions would be made.  Due to business activity in LA we have not moved that state to one person yet.

Jason indicated to me he wanted to provide input into the states he had and that if he only had TX, OK and NM that would create more uncertainty.

He mentioned the Friday deadline and I did not provide any input as ==I did not know that him not signing the RCA would lead to termination of his employment.==

He mentioned the non-compete and felt that the $20,000 in RSUs that came with signing it wasn't really fair compensation.

Allen K. Horne | Vice President, Government Affairs
512-423-5915
CVS Health

Horne's June 10, 2019 email makes CVSH's later emails (and the Administrator's RECORD) suggesting that Neerman "voluntarily resigned" by failing to execute the RCA incredibly disingenuous. In fact, **Horne's June 10, 2019 email should have caused a neutral Administrator to summarily dismiss CVSH's contention that Neerman voluntarily resigned**.

Nonetheless, if execution of the RCA was a condition of continued employment for all equity award participants, then Allen Horne and Vered Becker would have been aware of this fact prior to June 10, 2019 (over two months following the April 2, 2019 Equity Award Email).  More importantly, this condition of continued employment would have been clearly spelled out in the RCA itself (and the accompanying e-mail and MEMO).  As it stands, CVSH only began pushing this idea with a single employee, Neerman, *after* CVSH's reorganization systemically eliminated Neerman's position and *after* CVSH discovered or realized (for the first time) that, unlike most CVSH-legacy employees, Neerman had never previously signed an RCA.  Why did CVSH begin pushing Neerman to sign the RCA (or face the threat of formal "termination" as stated by Horne) on June 10, 2019 for the first time despite no prior communications of the same?  According to the Additional Documents, CVSH discovered for the first time that Neerman, an employee whose position was effectively being eliminated by the reorganization, had never previously signed an RCA.  Knowing that CVSH had a plan to eliminate and/or consolidate Neerman's position, CVSH for the first time threatened termination.  For this and related reasons, the following undisputed FINDINGS of fact must be included in the Administrator's RECORD:

- **Between April 2, 2019 and June 9, 2019, CVSH never communicated to Neerman that execution of the RCA was a condition of continued employment;**

6

- Between April 2, 2019 and June 9, 2019, CVSH investigated whether Neerman had previously signed an RCA with Aetna and/or CVSH;

- Between April 2, 2019 and June 9, 2019, CVSH determined for the first time, based upon its investigation, that Neerman had never previously executed an RCA with Aetna and/or CVSH (i.e. prior to April 2, 2019);

- Between April 2, 2019 and June 9, 2019, CVSH reorganized the Department of Governmental Affairs, including among other things, assigning Allen Horne, VP of Governmental Affairs, to the Texas jurisdiction (formerly the largest jurisdiction covered by Neerman) *and* putting together a plan to move all jurisdictions to single representation (i.e. 1 CVSH employee per jurisdiction);

- Between April 2, 2019 and June 9, 2019, Allen Horne never spoke with Jason Neerman about Neerman's employment with CVSH, Neerman's reassignment, Neerman's position the company or Neerman's job responsibilities despite Neerman being "re-assigned" to Horne;

- Between April 2, 2019 and June 9, 2019, Allen Horne, CVSH VP of Governmental Affairs, acknowledged being unaware that Neerman's execution of the RCA was a condition of Neerman's continued employment.

CVSH had the opportunity to include a provision in the RCA concerning continued employment, but failed or refused to do so.  On June 10, 2019, Neerman made CVSH aware that the RCA did *not* contain any language indicating that Neerman's continued employment was conditioned upon execution of the RCA:

---

He asked me what would be the next steps if he chose not to sign by Friday and I told him I will look into this as this is the first time I have someone seriously considering not signing – so I am not sure how we handle this from him. He did note the fact that nowhere on the RCA does it actually say that your employment depends on it....

I did advise him to share his concerns with Allen and to see if he can get any clarity about his role during their discussion today. I asked him to update me if anything changes following this meeting today but I am not sure that will be the case and I rather be prepared with answers.

Can you direct me to what do we do now in light of this situation?

Thanks,

**Vered Becker | HR Business Partner**
P: 401-770-3641 | C: 401-636-6301
♥ CVS Health | 1 CVS Drive, Woonsocket, RI 02895

---

Becker simply advised Neerman to "share his concerns" with Horne, Neerman's supervisor, who later admitted to not having been aware that Neerman faced termination if he refused to sign the RCA. But Neerman's point concerning the language of the RCA (i.e. the lack of any reference to

employment being conditioned upon execution) was significant in light of Paragraph 12 of the RCA, which states: "**the RCA set[s] forth the entire agreement between the parties hereto and fully supercedes any and all prior and/or supplemental understandings, whether written or oral, between the parties concerning the subject matter of this Agreement… I agree and acknowledge that I have not relied on any representations, promises or agreements of any kind in connection with my decision to accept the terms of this Agreement, except for the representations, promises and agreements herein.**" *See* RCA ¶12.  Based on these and related facts, the Administrator must enter the folowoing FACTS and/or FINDINGS in the RECORD:

- ▪ **On June 10, 2019, Neerman made CVSH aware that the RCA contained no provision or language suggesting that execution of the RCA was a condition of continued employment;**

- ▪ **The RCA provided that the parties were not entitled to rely on any verbal or written representations outside the four corners of the Agreement, stating in relevant part, "the RCA set[s] forth the entire agreement between the parties hereto and fully supercedes any and all prior and/or supplemental understandings, whether written or oral, between the parties concerning the subject matter of this Agreement… I agree and acknowledge that I have not relied on any representations, promises or agreements of any kind in connection with my decision to accept the terms of this Agreement, except for the representations, promises and agreements herein."**

- ▪ **Between June 10, 2019 and June 14, 2019 (CVSH's self-imposed deadline for signing the RCA), CVSH made no effort to amend, supplement and/or include language in the RCA making execution of the RCA a condition of continued employment, despite being the drafter of the document.**

The Administrator's RECORD is dismissive of Neerman's contention that the reorganization played any role in Neerman's termination, failing to include any substantive facts concerning CVSH's reorganization.  Yet, the Additional Documents contain numerous email communications confirming Neerman's prior allegations, including the systemic removal of Aetna-legacy upper management within this organization and reassignment of job duties to co-workers.[2]  By way of example, on June 10, 2019, Vered Becker (CVSH HR) emailed Marianne McClure under the Subject line " RCA," stating "*there is a lot of uncertainty in [Neerman's] role…*"  Likewise, Marianne McClure responded to Becker stating "*the GA [Governmental Affairs] team is going through a reorg and it is possible Jason's [Neerman] states may continue to change.*"  Also on June 10, 2019, Allen Horne (VP of Governmental Affairs) emailed Marianne McClure describing the systemic elimination of Neerman's position, stating "*we have two persons working in Louisiana but plan to have 1 person at some point…*"  In or around the same time, Neerman was informed by a colleague that she was "taking over the Louisiana jurisdiction."  While communications concerning this assignment exist, none have been produced.  CVSH is clearly aware of who was assigned the Louisiana jurisdiction, but the Administrator has wholly ignored this and related facts, and improperly omitted the same from the

---

[2] In fact, the emails acknowledging  CVSH's reorganization of the Department of Governmental Affairs are being sent in connection with CVSH's efforts to obtain Neerman's signature on the RCA.

Administrator's RECORD.  For this and related reasons, the following DOCUMENTS, FACTS and FINDINGS should be included in the Administrator's RECORD:

- **The CVSH Department of Governmental Affair went through a reorganization prior to Neerman's termination;**

- **The Aetna-legacy State and Federal Governmental Affairs Departments were "lifted and shifted" from the Aetna organization to the Office of General Counsel for CVSH;**

- **Over the six months preceding Neerman's termination, each of Mr. Neerman's Aetna legacy superiors were separated from their employment with CVSH;**

- **Prior to Neerman's termination, it was CVSH's plan to have single representation for each jurisdiction within the Department of Governmental Affairs per Allen Horne, Vice President of Governmental Affairs;**

- **Prior to Neerman's termination, Neerman was placed under the supervision of a CVSH-legacy employee who was assigned the same job responsibility as Neerman;**

- **Prior to Neerman's termination, the Texas jurisdiction was assigned to Allen Horne, a CVSH-legacy employee;**

- **Prior to Neerman's termination, the Louisiana jurisdiction was assigned to a CVSH-legacy employee;**

- **CVSH senior management consolidated the workforce into single representation in each of the jurisdictions formerly under the scope of Neerman's duties, including the states of Texas, Oklahoma and Louisiana, effectively eliminating Neerman's position.**

The Additional Documents clearly substantiate Neerman's claims concerning the reorganization and give rise to the need for additional documents related to the same.  Therefore, we'd request that the Administrator add these FACTS and/or FINDINGS to the RECORD and that CVSH produce additional documents (previously requested) concerning the subject reorganization.

In addition to the Administrator's failure to include the foregoing DOCUMENTS, FACTS and FINDINGS in the Administrator's RECORD, CVSH also continues to withhold crucial documents relevant to Neerman's claims, including without limitation the following:

- **Mr. Neerman's complete Employment File**; and

- **CVSH's Progressive Disciplinary Policy and/or Procedure**

The absence of Neerman's Employment File raises serious concerns.  Neerman's employment file should have been the first item reviewed by the Administrator and produced by CVSH in this

case.  Neerman's employment file should not take weeks (or months) to produce, particularly where Neerman (or his authorized representative) has specifically requested a copy of the same.  CVSH has an online system which stores much of Neerman's employment file.  For this reason, CVSH's failure to produce Neerman's employment file gives rise to a claim that the file, or parts of the file, have been altered or destroyed.  More importantly, the fact that the Administrator originally DENIED Neerman's claim without having even reviewed Neerman's Employment File is particularly disturbing, undercutting the credibility of the entire process.  How can an Administrator issue a DENIAL of Neerman's claim without ever having reviewed Neerman's complete employment file?  CVSH's failure or refusal to produce Neerman's employment file to date certainly indicates that the Administrator never even took the time to review the file.

In light of Allen Horne's June 10, 2019 email acknowledging that Neerman "not signing the RCA would lead to termination of his employment," CVSH's refusal to provide its Progressive Disciplinary Policy and/or Procedure is perplexing.  In your February 11 email, you state that CVSH is working "to confirm that there are no CVS Health progressive discipline policies or procedures during the relevant time period…"  It is a matter of public record that CVS has one or more progressive disciplinary policies and/or procedures applicable to acts of non-compliance and/or insubordination.  CVS uses "MOMENTUM" as an online tool to record progressive discipline history with its employees, applying a somewhat standard (and generic) Level I (L I), Level II (L II) and Level 3 (L III) designation for disciplinary action with company employees.  Clearly, Neerman's Momentum and/or Employment File should contain a record of CVSH's application of its progressive discipline procedure to Neerman for his act of noncompliance.  Yet, no such record has been produced.  My firm has over fifty years of combined experience in employment law, yet neither I nor my law partners have ever been involved with an employment dispute where a company (particularly the size of CVSH or Aetna) has not had a written progressive disciplinary policy applicable to all employees.  Parts of CVSH's progressive disciplinary policy and/or procedure are even available online.  By responding to Neerman's request for a copy of the progressive disciplinary policy with "there are no CVS Health progressive disciplinary policies or procedures… *that were applicable to circumstances in which an employee refuses to fulfill a condition of his or her employment,*" you've made a crude attempt to side-step the issue.  **CVSH has a general <u>PROGRESSIVE DISCIPLINARY POLICY which is applicable to any alleged non-compliance, failure to satisfy a condition of employment, or other act of insubordination</u>**.  CVSH has alleged that Neerman was non-compliant and CVSH clearly has a progressive disciplinary policy which applies to the same.  In fact, CVSH has a systemic record of each employee's progressive discipline (in Momentum).  CVSH's persistent refusal to provide a copy of the policy or Neerman's Employment File, including all documents in Momentum for Neerman, undercuts the credibility of the entire CLAIM and APPEAL process. <u>Please produce a copy of Neerman's complete Employment File, all documents on Momentum related to Neerman, and all progressive discipline policies immediately</u>.  In light of these and related facts, Neerman requests that the following documents and information and/or FINDINGS be included in the RECORD before the Administrator and otherwise considered on APPEAL:

- **In June 2019, CVSH had a progressive disciplinary policy and/or procedure and an on-line tool (Momentum) for keeping a record of all progressive discipline provided to employees;**

- **On or about June 14, 2019, CVSH considered Neerman's failure or refusal to execute the RCA to be an act of non-compliance;**

- **Following the expiration of CVS's June 14, 2019 self-imposed deadline for executing the RCA, CVSH did not follow its progressive disciplinary policy and/or procedure with Neerman;**

- **CVSH has no record of ever engaging in its progressive disciplinary policy and/or procedure with Jason Neerman for any reason**; and

- **CVSH has failed or refused to produce Neerman's Employment File and all information contained within Momentum concerning Neerman including without limitation all talent management information, colleague performance, talent reviews, individual development plans (IDPs), succession planning, coaching and Level I, II, II disciplinary actions**.

In addition to the Employment File and CVSH's Progressive Disciplinary Policy and/or Procedure, we must reiterate that CVSH has also failed or refused to produce additional documents requested by Neerman which appear to be relevant to Neerman's claim and APPEAL, including the following:

- **All documents and communications stating, indicating or suggesting that any equity awards were conditioned upon Neerman's execution of the RCA** (CVSH only produced part of a single PowerPoint presentation with no indication of when the presentation was sent or to whom);

- **All documents and communications concerning CVSH's re-organization of the Aetna Governmental Affairs Department, including without limitation all documents and communications associated with CVSH's May 3 announcements of the same** (IGNORED by February 11, 2020 Letter);

- **A current organizational chart identifying the person(s) at CVSH within the Governmental Affairs Department who are currently assigned to the following state legislative jurisdictions: Louisiana, New Mexico, Oklahoma and Texas, as well as the supervisor(s), director(s) and vice president(s) of the same** (IGNORED by February 11, 2020 Letter);

- **A list of the names of CVSH employees within the Governmental Affairs Department who are currently assigned to the following state legislative jurisdictions: Louisiana, New Mexico, Oklahoma and Texas** (IGNORED by February 11, 2020 Letter); and

- **Additional communications between CVSH HR personnel, including Vered Becker and Marianne McClure, between the dates of April 2, 2019 and June 10, 2019 discussing Neerman's employment, the investigation into whether Neerman had previously executed an RCA with Aetna and/or CVSH and whether Neerman's continued employment with CVSH was dependent upon**

**execution of the RCA** (based on communications actually produced, these emails clearly exist, but have not been produced).

In addition, the email communications contained within the Additional Documents clearly contain redacted emails, headers and information.  A simple review of the emails produced by CVSH reveals that CVSH has altered (in some cases very crudely) the email production.

Finally, CVSH's "**Overview of Communications with Jason Neerman**" (the "Overview") appears self-serving and intentionally omits key information contained within the Additional Documents relevant to Neerman's claims, including many of the undisputed facts bulleted above.  For example, the Overview places certain emphasis on verbal or e-mail communications between the parties, while ignoring the RCA's express terms (i.e. Paragraph 12, stating that no other oral or written representations have been made by CVSH to induce Neerman into signing the RCA) rendering such communications meaningless.  Thus, to the extent the Administrator purports to use the Overview in any way, we'd request that the foregoing bullet-point FACTS be added to the Overview.

If you have questions or concerns, or would like to discuss this matter further, do not hesitate to contact my office.

Very truly yours,

**JOHNSON HOBBS SQUIRES, LLP**

By:

Ryan C. Johnson

cc:     Client

# EXHIBIT 6

**Ryan Johnson**

| | |
|---|---|
| **From:** | Ryan Johnson |
| **Sent:** | Monday, April 6, 2020 4:59 PM |
| **To:** | Christensen, Keith J. |
| **Subject:** | RE: Neerman Appeal - Document Request |

Mr. Christensen:

I have no record of receiving a response from CVSH to our letter dated March 11, 2020.  Please advise whether and when we can expect a response from CVSH so that we know how to proceed.

*Ryan C. Johnson*

JOHNSON | HOBBS | SQUIRES LLP

400 Austin Avenue, 9th Floor
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com

Linked in profile



The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Ryan Johnson
**Sent:** Wednesday, March 11, 2020 3:39 PM
**To:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Subject:** RE: Neerman Appeal - Document Request

Mr. Christensen:

We've reviewed your e-mail response, along with the additional documents produced by CVSH.

Please find the attached Response to your February 11, 2020 e-mail (and Additional Document production by CVSH).

We'd request that CVSH (1) enter the FINDINGS contained in the attached Response into the RECORD and (2) produce the remaining documents requested by Neerman.

Thanks.

*Ryan C. Johnson*

JOHNSON | HOBBS | SQUIRES LLP

400 Austin Avenue, 9th Floor
Waco, Texas 76701

(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com

Linked in profile



The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Sent:** Tuesday, February 11, 2020 5:55 PM
**To:** Ryan Johnson <rjohnson@jhsfirm.com>
**Subject:** Neerman Appeal - Document Request

Dear Attorney Johnson,

Please find attached a .PDF of the relevant documents you requested related to Mr. Neerman's appeal of his denial of severance benefits under Aetna's Job Elimination Benefits Plan, which include all documents and communications contained in the record before the Administrator and/or which have been reviewed by Candace Jodice in reaching her original Determination of Claim; a copy of the email sent to Mr. Neerman on April 2, 2019 from Executive Compensation Client Services; the CVS Health memo and restrictive covenant agreement ("RCA") sent to Mr. Neerman from Adobe Sign on April 3, 2019; all documents and communications provided to Mr. Neerman in connection with his termination and/or separation from employment; all documents and communications indicating or suggesting that executing the RCA was a condition of Mr. Neerman's employment; and all documents and communications stating, indicating or suggesting that any equity awards were conditioned upon Mr. Neerman's execution of the RCA.

In addition, we have forwarded your request for Mr. Neerman's employment file to the HR department, and once the request has been processed, the file will be forwarded to you.  We anticipate that the file will be sent to you in the very near future.

With respect to your request for "All CVSH progressive discipline policies or procedures applicable during the relevant time period," we are confirming that there are no CVS Health progressive discipline policies or procedures during the relevant time period that were applicable to circumstances in which an employee refuses to fulfill a condition of his or her employment.

Please note as well that to the extent your requests have been determined to be unrelated or irrelevant to Mr. Neerman's claim for severance benefits and thus are not required to be provided under ERISA, we have not provided same.

Finally, as I noted in my January 15, 2020 email, I have suspended my review of Mr. Neerman's appeal while we were gathering the relevant documents responsive to your document request. Now that we have provided you with the relevant requested documents, I intend to begin my review of Mr. Neerman's appeal and respond to you within 60 days of today's date.  Accordingly, please let me know as soon as possible if you intend to submit additional information in support of Mr. Neerman's appeal so that I can be sure to take any such information into account during my review.

Regards,

Keith Christensen

**Keith Christensen** | Senior Vice President, HR Corporate Services
**p** 401-770-5427 | **f** 401-652-9120 | **e** keith.christensen@CVSHealth.com
**CVS Health** | 1 CVS Drive Woonsocket RI 02895

CONFIDENTIALITY NOTICE: This communication and any attachments may contain confidential and/or privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify the sender immediately by email or telephone and destroy all copies of this communication and any attachments.

# EXHIBIT 7

**Ryan Johnson**

| | |
|---|---|
| **From:** | Ryan Johnson |
| **Sent:** | Wednesday, April 15, 2020 3:02 PM |
| **To:** | Christensen, Keith J. |
| **Subject:** | RE: Neerman Appeal - Document Request |

Mr. Christensen:

Again, I have no record of receiving a response from CVSH to my letter dated March 11, 2020.  Please advise whether and when we can expect a response from CVSH so that we know how to proceed.

*Ryan C. Johnson*

JOHNSON | HOBBS | SQUIRES LLP

400 Austin Avenue, 9th Floor
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com

Linked in profile



The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Ryan Johnson
**Sent:** Monday, April 6, 2020 4:59 PM
**To:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Subject:** RE: Neerman Appeal - Document Request

Mr. Christensen:

I have no record of receiving a response from CVSH to our letter dated March 11, 2020.  Please advise whether and when we can expect a response from CVSH so that we know how to proceed.

*Ryan C. Johnson*

JOHNSON | HOBBS | SQUIRES LLP

400 Austin Avenue, 9th Floor
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com





The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Ryan Johnson
**Sent:** Wednesday, March 11, 2020 3:39 PM
**To:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Subject:** RE: Neerman Appeal - Document Request

Mr. Christensen:

We've reviewed your e-mail response, along with the additional documents produced by CVSH.

Please find the attached Response to your February 11, 2020 e-mail (and Additional Document production by CVSH).

We'd request that CVSH (1) enter the FINDINGS contained in the attached Response into the RECORD and (2) produce the remaining documents requested by Neerman.

Thanks.

*Ryan C. Johnson*

Johnson | Hobbs | Squires LLP
400 Austin Avenue, 9th Floor
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com



The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Sent:** Tuesday, February 11, 2020 5:55 PM
**To:** Ryan Johnson <rjohnson@jhsfirm.com>
**Subject:** Neerman Appeal - Document Request

Dear Attorney Johnson,

Please find attached a .PDF of the relevant documents you requested related to Mr. Neerman's appeal of his denial of severance benefits under Aetna's Job Elimination Benefits Plan, which include all documents and communications

contained in the record before the Administrator and/or which have been reviewed by Candace Jodice in reaching her original Determination of Claim; a copy of the email sent to Mr. Neerman on April 2, 2019 from Executive Compensation Client Services; the CVS Health memo and restrictive covenant agreement ("RCA") sent to Mr. Neerman from Adobe Sign on April 3, 2019; all documents and communications provided to Mr. Neerman in connection with his termination and/or separation from employment; all documents and communications indicating or suggesting that executing the RCA was a condition of Mr. Neerman's employment; and all documents and communications stating, indicating or suggesting that any equity awards were conditioned upon Mr. Neerman's execution of the RCA.

In addition, we have forwarded your request for Mr. Neerman's employment file to the HR department, and once the request has been processed, the file will be forwarded to you.  We anticipate that the file will be sent to you in the very near future.

With respect to your request for "All CVSH progressive discipline policies or procedures applicable during the relevant time period," we are confirming that there are no CVS Health progressive discipline policies or procedures during the relevant time period that were applicable to circumstances in which an employee refuses to fulfill a condition of his or her employment.

Please note as well that to the extent your requests have been determined to be unrelated or irrelevant to Mr. Neerman's claim for severance benefits and thus are not required to be provided under ERISA, we have not provided same.

Finally, as I noted in my January 15, 2020 email, I have suspended my review of Mr. Neerman's appeal while we were gathering the relevant documents responsive to your document request. Now that we have provided you with the relevant requested documents, I intend to begin my review of Mr. Neerman's appeal and respond to you within 60 days of today's date.  Accordingly, please let me know as soon as possible if you intend to submit additional information in support of Mr. Neerman's appeal so that I can be sure to take any such information into account during my review.

Regards,

Keith Christensen

**Keith Christensen** │Senior Vice President, HR Corporate Services
**p** 401-770-5427 │**f**  401-652-9120 │**e** keith.christensen@CVSHealth.com
**CVS Health** │1 CVS Drive Woonsocket RI 02895

CONFIDENTIALITY NOTICE: This communication and any attachments may contain confidential and/or privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify the sender immediately by email or telephone and destroy all copies of this communication and any attachments.

# EXHIBIT 8

**Ryan Johnson**

| | |
|---|---|
| **From:** | Ryan Johnson |
| **Sent:** | Thursday, April 30, 2020 3:16 PM |
| **To:** | Christensen, Keith J. |
| **Subject:** | RE: Neerman Appeal - Document Request |

Mr. Christensen:

On February 11, 2020, you sent me a letter with documents concerning Mr. Neerman's Appeal of his denial of benefits.  In this letter, you requested any additional information and stated that you "**intend to begin my review of Mr. Neerman's appeal and respond to you within 60 days of today's date [February 11].**"  Your response was due by April 11, 2020, but none was received.  Likewise, the Plan and the original denial letter (dated October 28, 2019) stated "**if a review on an appeal is made, the Administrator will advise Mr. Neerman (or his duly authorized representative), in writing, of the Administrator's decision <u>within 60 days of receipt of the written appeal</u>, unless special circumstances require an extension of such 60-day period for <u>not more than an additional 60 days</u>.  <u>Where such an extension is necessary, written notice will be provided of the delay before the expiration of the initial 60-day period.</u>**"

On March 11, 2020, my office sent you a detailed letter in response to your e-mail dated February 11 concerning Mr. Neerman's appeal.  I then sent you e-mails on April 6 and April 15 requesting a status update.  I never received any response to the March 11, April 6 or April 11 letters and/or emails.  According to your February 11, 2020 e-mail (as well as the Plan and the original denial by CVSH), you were required to review the appeal and provide a formal response within sixty days of February 11, 2020 (or before April 11).   You never provided a response.

It is now April 30 and we have received no response.  In addition, my requests for status updates have been altogether ignored.

At this point, without even a response from you or CVSH, I can only assume that CVSH has no intention of complying with the Plan or otherwise fulfilling its promises and representations of providing a final and timely determination of the Appeal.  I am frankly surprised that CVSH would so obviously ignore the plain language of its Plan and/or simply ignore such stated deadlines.

At this point, Mr. Neerman has clearly exhausted all administrative processes and remedies afforded by the Plan.  Without any response (timely or otherwise) from CVSH, it appears CVSH has WAIVED its rights and remedies under the Plan and is prepared to accept Neerman's demand.

If you fail to respond within the next 24 hours, I will be left to assume CVSH has WAIVED its prior denial of Neerman's claim under the Plan.  I will also raise this issue to additional management within CVSH and add these actions and/or omissions to Mr. Neerman's claims.

*Ryan C. Johnson*
JOHNSON | HOBBS | SQUIRES LLP
400 Austin Avenue, 9th Floor
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com

Linked in profile



The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Ryan Johnson
**Sent:** Wednesday, April 15, 2020 3:02 PM
**To:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Subject:** RE: Neerman Appeal - Document Request

Mr. Christensen:

Again, I have no record of receiving a response from CVSH to my letter dated March 11, 2020.  Please advise whether and when we can expect a response from CVSH so that we know how to proceed.

*Ryan C. Johnson*

## JOHNSON | HOBBS | SQUIRES LLP

400 Austin Avenue, 9th Floor
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com

Linked in profile



The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Ryan Johnson
**Sent:** Monday, April 6, 2020 4:59 PM
**To:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Subject:** RE: Neerman Appeal - Document Request

Mr. Christensen:

I have no record of receiving a response from CVSH to our letter dated March 11, 2020.  Please advise whether and when we can expect a response from CVSH so that we know how to proceed.

*Ryan C. Johnson*

## JOHNSON | HOBBS | SQUIRES LLP

400 Austin Avenue, 9th Floor
Waco, Texas 76701

(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com





The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Ryan Johnson
**Sent:** Wednesday, March 11, 2020 3:39 PM
**To:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Subject:** RE: Neerman Appeal - Document Request

Mr. Christensen:

We've reviewed your e-mail response, along with the additional documents produced by CVSH.

Please find the attached Response to your February 11, 2020 e-mail (and Additional Document production by CVSH).

We'd request that CVSH (1) enter the FINDINGS contained in the attached Response into the RECORD and (2) produce the remaining documents requested by Neerman.

Thanks.

*Ryan C. Johnson*

JOHNSON | HOBBS | SQUIRES LLP
400 Austin Avenue, 9th Floor
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com





The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Sent:** Tuesday, February 11, 2020 5:55 PM
**To:** Ryan Johnson <rjohnson@jhsfirm.com>
**Subject:** Neerman Appeal - Document Request

Dear Attorney Johnson,

Please find attached a .PDF of the relevant documents you requested related to Mr. Neerman's appeal of his denial of severance benefits under Aetna's Job Elimination Benefits Plan, which include all documents and communications contained in the record before the Administrator and/or which have been reviewed by Candace Jodice in reaching her original Determination of Claim; a copy of the email sent to Mr. Neerman on April 2, 2019 from Executive Compensation Client Services; the CVS Health memo and restrictive covenant agreement ("RCA") sent to Mr. Neerman from Adobe Sign on April 3, 2019; all documents and communications provided to Mr. Neerman in connection with his termination and/or separation from employment; all documents and communications indicating or suggesting that executing the RCA was a condition of Mr. Neerman's employment; and all documents and communications stating, indicating or suggesting that any equity awards were conditioned upon Mr. Neerman's execution of the RCA.

In addition, we have forwarded your request for Mr. Neerman's employment file to the HR department, and once the request has been processed, the file will be forwarded to you.  We anticipate that the file will be sent to you in the very near future.

With respect to your request for "All CVSH progressive discipline policies or procedures applicable during the relevant time period," we are confirming that there are no CVS Health progressive discipline policies or procedures during the relevant time period that were applicable to circumstances in which an employee refuses to fulfill a condition of his or her employment.

Please note as well that to the extent your requests have been determined to be unrelated or irrelevant to Mr. Neerman's claim for severance benefits and thus are not required to be provided under ERISA, we have not provided same.

Finally, as I noted in my January 15, 2020 email, I have suspended my review of Mr. Neerman's appeal while we were gathering the relevant documents responsive to your document request. Now that we have provided you with the relevant requested documents, I intend to begin my review of Mr. Neerman's appeal and respond to you within 60 days of today's date.  Accordingly, please let me know as soon as possible if you intend to submit additional information in support of Mr. Neerman's appeal so that I can be sure to take any such information into account during my review.

Regards,

Keith Christensen

**Keith Christensen** │Senior Vice President, HR Corporate Services
**p** 401-770-5427 │**f** 401-652-9120 │**e** keith.christensen@CVSHealth.com
**CVS Health** │1 CVS Drive Woonsocket RI 02895

CONFIDENTIALITY NOTICE: This communication and any attachments may contain confidential and/or privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify the sender immediately by email or telephone and destroy all copies of this communication and any attachments.

# EXHIBIT 9

**Ryan Johnson**

___

**From:**          Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Sent:**          Wednesday, January 15, 2020 12:28 PM
**To:**            Ryan Johnson
**Subject:**       Neerman Appeal

Dear Attorney Johnson,

I am in receipt of your letter dated December 13, 2019, which constitutes an appeal of the decision of Candace Jodice to deny the claim submitted on behalf of your client, Jason Neerman, for severance benefits under the Aetna Inc. Job Elimination Benefits Plan (the "Plan").  Your letter requests that a list of items be provided to you on behalf of Mr. Neerman, and I am writing to confirm that we are in the process of reviewing your request and gathering the relevant items.  In view of your request and your statement that you may submit additional information in support of Mr. Neerman's appeal upon receipt of such items, I will suspend my review of this appeal until such time as you have received the relevant requested items. Regards,

Keith

**Keith Christensen** | Senior Vice President, HR Corporate Services
**p** 401-770-5427 | **f**  401-652-9120 | **e** keith.christensen@CVSHealth.com
**CVS Health** | 1 CVS Drive Woonsocket RI 02895

CONFIDENTIALITY NOTICE: This communication and any attachments may contain confidential and/or privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify the sender immediately by email or telephone and destroy all copies of this communication and any attachments.

**Ryan Johnson**

| | |
|---|---|
| **From:** | Ryan Johnson |
| **Sent:** | Wednesday, January 15, 2020 2:06 PM |
| **To:** | Christensen, Keith J. |
| **Subject:** | RE: Neerman Appeal |

Mr. Christensen:

<mark>Can you please advise us on when you expect to provide the documents?</mark>

<mark>We'd also request that you provide us with a copy of CVSH's relevant document retention policy.</mark>

Thanks.

*Ryan C. Johnson*

JOHNSON | HOBBS | SQUIRES LLP
400 Austin Avenue, 9th Floor
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com

Linked in profile



The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Sent:** Wednesday, January 15, 2020 12:28 PM
**To:** Ryan Johnson <rjohnson@jhsfirm.com>
**Subject:** Neerman Appeal

Dear Attorney Johnson,

I am in receipt of your letter dated December 13, 2019, which constitutes an appeal of the decision of Candace Jodice to deny the claim submitted on behalf of your client, Jason Neerman, for severance benefits under the Aetna Inc. Job Elimination Benefits Plan (the "Plan").   Your letter requests that a list of items be provided to you on behalf of Mr. Neerman, and I am writing to confirm that we are in the process of reviewing your request and gathering the relevant items.  In view of your request and your statement that you may submit additional information in support of Mr. Neerman's appeal upon receipt of such items, I will suspend my review of this appeal until such time as you have received the relevant requested items. Regards,

Keith

**Keith Christensen** │ Senior Vice President, HR Corporate Services
**p** 401-770-5427 │ **f** 401-652-9120 │ **e** keith.christensen@CVSHealth.com
**CVS Health** │ 1 CVS Drive Woonsocket RI 02895

CONFIDENTIALITY NOTICE: This communication and any attachments may contain confidential and/or privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify the sender immediately by email or telephone and destroy all copies of this communication and any attachments.

**Ryan Johnson**

---

**From:**       Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Sent:**       Thursday, January 16, 2020 12:47 PM
**To:**         Ryan Johnson
**Subject:**    RE: Neerman Appeal

Dear Attorney Johnson,

<mark>We are working on gathering the requested relevant documents and will provide them as soon as possible;</mark> hopefully, at some point next week.

With respect to your request for CVSH's document retention policy, such policy is not relevant to my review of your appeal on behalf of Mr. Neerman and will not be provided. Regards,

Keith

**Keith Christensen** │ Senior Vice President, HR Corporate Services
**p** 401-770-5427 │ **f** 401-652-9120 │ **e** keith.christensen@CVSHealth.com
**CVS Health** │ 1 CVS Drive Woonsocket RI 02895

CONFIDENTIALITY NOTICE: This communication and any attachments may contain confidential and/or privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify the sender immediately by email or telephone and destroy all copies of this communication and any attachments.

---

**From:** Ryan Johnson [mailto:rjohnson@jhsfirm.com]
**Sent:** Wednesday, January 15, 2020 3:06 PM
**To:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Subject:** [EXTERNAL] RE: Neerman Appeal

Mr. Christensen:

Can you please advise us on when you expect to provide the documents?

We'd also request that you provide us with a copy of CVSH's relevant document retention policy.

Thanks.

*Ryan C. Johnson*

JOHNSON | HOBBS | SQUIRES LLP
400 Austin Avenue, 9th Floor
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com

**Linked**in profile



The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Sent:** Wednesday, January 15, 2020 12:28 PM
**To:** Ryan Johnson <rjohnson@jhsfirm.com>
**Subject:** Neerman Appeal

Dear Attorney Johnson,

I am in receipt of your letter dated December 13, 2019, which constitutes an appeal of the decision of Candace Jodice to deny the claim submitted on behalf of your client, Jason Neerman, for severance benefits under the Aetna Inc. Job Elimination Benefits Plan (the "Plan").   Your letter requests that a list of items be provided to you on behalf of Mr. Neerman, and I am writing to confirm that we are in the process of reviewing your request and gathering the relevant items.  In view of your request and your statement that you may submit additional information in support of Mr. Neerman's appeal upon receipt of such items, I will suspend my review of this appeal until such time as you have received the relevant requested items. Regards,

Keith

**Keith Christensen** │ Senior Vice President, HR Corporate Services
**p** 401-770-5427 │ **f**  401-652-9120 │ **e** keith.christensen@CVSHealth.com
**CVS Health** │ 1 CVS Drive Woonsocket RI 02895

CONFIDENTIALITY NOTICE: This communication and any attachments may contain confidential and/or privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify the sender immediately by email or telephone and destroy all copies of this communication and any attachments.

## Ryan Johnson

| | |
|---|---|
| **From:** | Ryan Johnson |
| **Sent:** | Thursday, January 16, 2020 4:02 PM |
| **To:** | Christensen, Keith J. |
| **Subject:** | RE: Neerman Appeal |

Mr. Christensen:

With all due respect, the Plan clearly permits Mr. Neerman (or his duly authorized representative) to be provided, free of charge, "**reasonable access to, and copies of, all documents, records and other information <u>relevant to his claim for benefits</u>.**"  Your response stating that the requested document (CVSH's Document Retention Policy) is "<u>not relevant to my review of your appeal</u>" is not the standard for document production described in the Plan.  The issue is whether CVSH's Document Retention Policy is "relevant to [Neerman's] claim for benefits," not whether CVSH unilaterally deems it "relevant to [the Administrator's] review of your appeal."  The Plan requires CVSH to provide Neerman access to documents relevant to his claim for benefits, and therefore, CVSH's refusal to provide the document on the basis stated in your email below would constitute a violation of the terms of the Plan.

Neerman has requested a copy of CVSH's Document Retention Policy because the existing policy is relevant to his claim for benefits.  The request is not onerous insomuch as it seeks a single document.  The request is relevant because it defines the obligation of CVSH to preserve certain documents relevant to Neerman's claim.  In fact, Neerman has requested numerous documents relevant to his claim for benefits, which you've acknowledged CVSH is obligated to provide.  But without the Document Retention Policy, neither CVSH nor Neerman can be sure that CVSH employees have provided all of the relevant/requested documents (or that case dispositive documents have been improperly disposed of).  The Document Retention Policy is intended to ensure that CVSH preserve certain documents necessary for making claims under the Plan and defines CVSH's obligation to do so. Without providing Neerman access to the Policy (which should be readily available to all CVSH employees for their own benefit), neither the Administrator nor Neerman have any way of knowing which of the requested, relevant documents should have been preserved and produced.

There is simply no valid reason for withholding a Document Retention Policy from an employee making a claim under the Plan.  The Policy is intended to protect both employees and CVSH and will serve to ensure that both the Administrator and Neerman have received all the documents relevant to Neerman's claim for benefits (or that documents are being improperly withheld).  One would assume the person responsible for reviewing Neerman's appeal would, prior to ruling, wish to know whether CVSH management had actually followed its Document Retention Policy concerning documents relevant to Neerman's claim for benefits.

*Ryan C. Johnson*
JOHNSON | HOBBS | SQUIRES LLP
400 Austin Avenue, 9th Floor
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com

Linked in profile



The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited. Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature. If you received this in error, please contact the sender and delete the material from any computer.

**From:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Sent:** Thursday, January 16, 2020 12:47 PM
**To:** Ryan Johnson <rjohnson@jhsfirm.com>
**Subject:** RE: Neerman Appeal

Dear Attorney Johnson,

We are working on gathering the requested relevant documents and will provide them as soon as possible; hopefully, at some point next week.

With respect to your request for CVSH's document retention policy, such policy is not relevant to my review of your appeal on behalf of Mr. Neerman and will not be provided. Regards,

Keith

**Keith Christensen** │ Senior Vice President, HR Corporate Services
**p** 401-770-5427 │ **f** 401-652-9120 │ **e** keith.christensen@CVSHealth.com
**CVS Health** │ 1 CVS Drive Woonsocket RI 02895

CONFIDENTIALITY NOTICE: This communication and any attachments may contain confidential and/or privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify the sender immediately by email or telephone and destroy all copies of this communication and any attachments.

**From:** Ryan Johnson [mailto:rjohnson@jhsfirm.com]
**Sent:** Wednesday, January 15, 2020 3:06 PM
**To:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Subject:** [EXTERNAL] RE: Neerman Appeal

Mr. Christensen:

Can you please advise us on when you expect to provide the documents?

We'd also request that you provide us with a copy of CVSH's relevant document retention policy.

Thanks.

*Ryan C. Johnson*

JOHNSON │ HOBBS │ SQUIRES LLP
400 Austin Avenue, 9th Floor
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com

Linked in profile



The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited. Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature. If you received this in error, please contact the sender and delete the material from any computer.

**From:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Sent:** Wednesday, January 15, 2020 12:28 PM
**To:** Ryan Johnson <rjohnson@jhsfirm.com>
**Subject:** Neerman Appeal

Dear Attorney Johnson,

I am in receipt of your letter dated December 13, 2019, which constitutes an appeal of the decision of Candace Jodice to deny the claim submitted on behalf of your client, Jason Neerman, for severance benefits under the Aetna Inc. Job Elimination Benefits Plan (the "Plan"). Your letter requests that a list of items be provided to you on behalf of Mr. Neerman, and I am writing to confirm that we are in the process of reviewing your request and gathering the relevant items. In view of your request and your statement that you may submit additional information in support of Mr. Neerman's appeal upon receipt of such items, I will suspend my review of this appeal until such time as you have received the relevant requested items. Regards,

Keith

**Keith Christensen** | Senior Vice President, HR Corporate Services
**p** 401-770-5427 | **f** 401-652-9120 | **e** keith.christensen@CVSHealth.com
**CVS Health** | 1 CVS Drive Woonsocket RI 02895

CONFIDENTIALITY NOTICE: This communication and any attachments may contain confidential and/or privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify the sender immediately by email or telephone and destroy all copies of this communication and any attachments.

**Ryan Johnson**

---

**From:**          Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Sent:**          Tuesday, February 11, 2020 5:55 PM
**To:**            Ryan Johnson
**Subject:**       Neerman Appeal - Document Request
**Attachments:**   Jason Neerman Document Request.pdf

Dear Attorney Johnson,

Please find attached a .PDF of the relevant documents you requested related to Mr. Neerman's appeal of his denial of severance benefits under Aetna's Job Elimination Benefits Plan, which include all documents and communications contained in the record before the Administrator and/or which have been reviewed by Candace Jodice in reaching her original Determination of Claim; a copy of the email sent to Mr. Neerman on April 2, 2019 from Executive Compensation Client Services; the CVS Health memo and restrictive covenant agreement ("RCA") sent to Mr. Neerman from Adobe Sign on April 3, 2019; all documents and communications provided to Mr. Neerman in connection with his termination and/or separation from employment; all documents and communications indicating or suggesting that executing the RCA was a condition of Mr. Neerman's employment; and all documents and communications stating, indicating or suggesting that any equity awards were conditioned upon Mr. Neerman's execution of the RCA.

In addition, we have forwarded your request for Mr. Neerman's employment file to the HR department, and once the request has been processed, the file will be forwarded to you.  We anticipate that the file will be sent to you in the very near future.

With respect to your request for "All CVSH progressive discipline policies or procedures applicable during the relevant time period," we are confirming that there are no CVS Health progressive discipline policies or procedures during the relevant time period that were applicable to circumstances in which an employee refuses to fulfill a condition of his or her employment.

Please note as well that to the extent your requests have been determined to be unrelated or irrelevant to Mr. Neerman's claim for severance benefits and thus are not required to be provided under ERISA, we have not provided same.

Finally, as I noted in my January 15, 2020 email, I have suspended my review of Mr. Neerman's appeal while we were gathering the relevant documents responsive to your document request. Now that we have provided you with the relevant requested documents, I intend to begin my review of Mr. Neerman's appeal and respond to you within 60 days of today's date.  Accordingly, please let me know as soon as possible if you intend to submit additional information in support of Mr. Neerman's appeal so that I can be sure to take any such information into account during my review.

Regards,

Keith Christensen

---

**Keith Christensen** | Senior Vice President, HR Corporate Services
**p** 401-770-5427 | **f**  401-652-9120 | **e** keith.christensen@CVSHealth.com
**CVS Health** | 1 CVS Drive Woonsocket RI 02895

CONFIDENTIALITY NOTICE: This communication and any attachments may contain confidential and/or privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have

received this communication in error, please notify the sender immediately by email or telephone and destroy all copies of this communication and any attachments.

**Ryan Johnson**

| | |
|---|---|
| **From:** | Ryan Johnson |
| **Sent:** | Wednesday, March 11, 2020 3:39 PM |
| **To:** | Christensen, Keith J. |
| **Subject:** | RE: Neerman Appeal - Document Request |
| **Attachments:** | 03.11.20 Ltr to CVSH Re Appeal.pdf |

Mr. Christensen:

We've reviewed your e-mail response, along with the additional documents produced by CVSH.

Please find the attached Response to your February 11, 2020 e-mail (and Additional Document production by CVSH).

We'd request that CVSH (1) enter the FINDINGS contained in the attached Response into the RECORD and (2) produce the remaining documents requested by Neerman.

Thanks.

*Ryan C. Johnson*

JOHNSON | HOBBS | SQUIRES LLP
400 Austin Avenue, 9th Floor
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com

Linked in profile



The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited. Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature. If you received this in error, please contact the sender and delete the material from your computer.

**From:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Sent:** Tuesday, February 11, 2020 5:55 PM
**To:** Ryan Johnson <rjohnson@jhsfirm.com>
**Subject:** Neerman Appeal - Document Request

Dear Attorney Johnson,

Please find attached a .PDF of the relevant documents you requested related to Mr. Neerman's appeal of his denial of severance benefits under Aetna's Job Elimination Benefits Plan, which include all documents and communications contained in the record before the Administrator and/or which have been reviewed by Candace Jodice in reaching her original Determination of Claim; a copy of the email sent to Mr. Neerman on April 2, 2019 from Executive Compensation Client Services; the CVS Health memo and restrictive covenant agreement ("RCA") sent to Mr. Neerman from Adobe Sign on April 3, 2019; all documents and communications provided to Mr. Neerman in connection with his termination and/or separation from employment; all documents and communications indicating or suggesting that executing the

RCA was a condition of Mr. Neerman's employment; and all documents and communications stating, indicating or suggesting that any equity awards were conditioned upon Mr. Neerman's execution of the RCA.

In addition, we have forwarded your request for Mr. Neerman's employment file to the HR department, and once the request has been processed, the file will be forwarded to you.  We anticipate that the file will be sent to you in the very near future.

With respect to your request for "All CVSH progressive discipline policies or procedures applicable during the relevant time period," we are confirming that there are no CVS Health progressive discipline policies or procedures during the relevant time period that were applicable to circumstances in which an employee refuses to fulfill a condition of his or her employment.

Please note as well that to the extent your requests have been determined to be unrelated or irrelevant to Mr. Neerman's claim for severance benefits and thus are not required to be provided under ERISA, we have not provided same.

Finally, as I noted in my January 15, 2020 email, I have suspended my review of Mr. Neerman's appeal while we were gathering the relevant documents responsive to your document request. Now that we have provided you with the relevant requested documents, I intend to begin my review of Mr. Neerman's appeal and respond to you within 60 days of today's date.  Accordingly, please let me know as soon as possible if you intend to submit additional information in support of Mr. Neerman's appeal so that I can be sure to take any such information into account during my review.

Regards,

Keith Christensen

**Keith Christensen** │ Senior Vice President, HR Corporate Services
**p** 401-770-5427 │ **f**  401-652-9120 │ **e** keith.christensen@CVSHealth.com
**CVS Health** │ 1 CVS Drive Woonsocket RI 02895

CONFIDENTIALITY NOTICE: This communication and any attachments may contain confidential and/or privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify the sender immediately by email or telephone and destroy all copies of this communication and any attachments.

**Ryan Johnson**

| | |
|---|---|
| **From:** | Ryan Johnson |
| **Sent:** | Monday, April 6, 2020 4:59 PM |
| **To:** | Christensen, Keith J. |
| **Subject:** | RE: Neerman Appeal - Document Request |

Mr. Christensen:

<mark>I have no record of receiving a response from CVSH to our letter dated March 11, 2020.  Please advise whether and when we can expect a response from CVSH so that we know how to proceed.</mark>

*Ryan C. Johnson*

JOHNSON | HOBBS | SQUIRES LLP

400 Austin Avenue, 9th Floor
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com

Linked **in** profile



The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Ryan Johnson
**Sent:** Wednesday, March 11, 2020 3:39 PM
**To:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Subject:** RE: Neerman Appeal - Document Request

Mr. Christensen:

We've reviewed your e-mail response, along with the additional documents produced by CVSH.

Please find the attached Response to your February 11, 2020 e-mail (and Additional Document production by CVSH).

We'd request that CVSH (1) enter the FINDINGS contained in the attached Response into the RECORD and (2) produce the remaining documents requested by Neerman.

Thanks.

*Ryan C. Johnson*

JOHNSON | HOBBS | SQUIRES LLP

400 Austin Avenue, 9th Floor
Waco, Texas 76701

(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com

Linked in profile



The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Sent:** Tuesday, February 11, 2020 5:55 PM
**To:** Ryan Johnson <rjohnson@jhsfirm.com>
**Subject:** Neerman Appeal - Document Request

Dear Attorney Johnson,

Please find attached a .PDF of the relevant documents you requested related to Mr. Neerman's appeal of his denial of severance benefits under Aetna's Job Elimination Benefits Plan, which include all documents and communications contained in the record before the Administrator and/or which have been reviewed by Candace Jodice in reaching her original Determination of Claim; a copy of the email sent to Mr. Neerman on April 2, 2019 from Executive Compensation Client Services; the CVS Health memo and restrictive covenant agreement ("RCA") sent to Mr. Neerman from Adobe Sign on April 3, 2019; all documents and communications provided to Mr. Neerman in connection with his termination and/or separation from employment; all documents and communications indicating or suggesting that executing the RCA was a condition of Mr. Neerman's employment; and all documents and communications stating, indicating or suggesting that any equity awards were conditioned upon Mr. Neerman's execution of the RCA.

In addition, we have forwarded your request for Mr. Neerman's employment file to the HR department, and once the request has been processed, the file will be forwarded to you.  We anticipate that the file will be sent to you in the very near future.

With respect to your request for "All CVSH progressive discipline policies or procedures applicable during the relevant time period," we are confirming that there are no CVS Health progressive discipline policies or procedures during the relevant time period that were applicable to circumstances in which an employee refuses to fulfill a condition of his or her employment.

Please note as well that to the extent your requests have been determined to be unrelated or irrelevant to Mr. Neerman's claim for severance benefits and thus are not required to be provided under ERISA, we have not provided same.

Finally, as I noted in my January 15, 2020 email, I have suspended my review of Mr. Neerman's appeal while we were gathering the relevant documents responsive to your document request. Now that we have provided you with the relevant requested documents, I intend to begin my review of Mr. Neerman's appeal and respond to you within 60 days of today's date.  Accordingly, please let me know as soon as possible if you intend to submit additional information in support of Mr. Neerman's appeal so that I can be sure to take any such information into account during my review.

Regards,

Keith Christensen

**Keith Christensen** | Senior Vice President, HR Corporate Services
**p** 401-770-5427 | **f** 401-652-9120 | **e** keith.christensen@CVSHealth.com
**CVS Health** | 1 CVS Drive Woonsocket RI 02895

CONFIDENTIALITY NOTICE: This communication and any attachments may contain confidential and/or privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify the sender immediately by email or telephone and destroy all copies of this communication and any attachments.

**Ryan Johnson**

| | |
|---|---|
| **From:** | Ryan Johnson |
| **Sent:** | Wednesday, April 15, 2020 3:02 PM |
| **To:** | Christensen, Keith J. |
| **Subject:** | RE: Neerman Appeal - Document Request |

Mr. Christensen:

<mark>Again, I have no record of receiving a response from CVSH to my letter dated March 11, 2020.  Please advise whether and when we can expect a response from CVSH so that we know how to proceed.</mark>

*Ryan C. Johnson*

Johnson | Hobbs | Squires LLP

400 Austin Avenue, 9th Floor
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com

Linked in profile



The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Ryan Johnson
**Sent:** Monday, April 6, 2020 4:59 PM
**To:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Subject:** RE: Neerman Appeal - Document Request

Mr. Christensen:

I have no record of receiving a response from CVSH to our letter dated March 11, 2020.  Please advise whether and when we can expect a response from CVSH so that we know how to proceed.

*Ryan C. Johnson*

Johnson | Hobbs | Squires LLP

400 Austin Avenue, 9th Floor
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com





The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Ryan Johnson
**Sent:** Wednesday, March 11, 2020 3:39 PM
**To:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Subject:** RE: Neerman Appeal - Document Request

Mr. Christensen:

We've reviewed your e-mail response, along with the additional documents produced by CVSH.

Please find the attached Response to your February 11, 2020 e-mail (and Additional Document production by CVSH).

We'd request that CVSH (1) enter the FINDINGS contained in the attached Response into the RECORD and (2) produce the remaining documents requested by Neerman.

Thanks.

*Ryan C. Johnson*

JOHNSON | HOBBS | SQUIRES LLP
400 Austin Avenue, 9th Floor
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com



The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Sent:** Tuesday, February 11, 2020 5:55 PM
**To:** Ryan Johnson <rjohnson@jhsfirm.com>
**Subject:** Neerman Appeal - Document Request

Dear Attorney Johnson,

Please find attached a .PDF of the relevant documents you requested related to Mr. Neerman's appeal of his denial of severance benefits under Aetna's Job Elimination Benefits Plan, which include all documents and communications

contained in the record before the Administrator and/or which have been reviewed by Candace Jodice in reaching her original Determination of Claim; a copy of the email sent to Mr. Neerman on April 2, 2019 from Executive Compensation Client Services; the CVS Health memo and restrictive covenant agreement ("RCA") sent to Mr. Neerman from Adobe Sign on April 3, 2019; all documents and communications provided to Mr. Neerman in connection with his termination and/or separation from employment; all documents and communications indicating or suggesting that executing the RCA was a condition of Mr. Neerman's employment; and all documents and communications stating, indicating or suggesting that any equity awards were conditioned upon Mr. Neerman's execution of the RCA.

In addition, we have forwarded your request for Mr. Neerman's employment file to the HR department, and once the request has been processed, the file will be forwarded to you.  We anticipate that the file will be sent to you in the very near future.

With respect to your request for "All CVSH progressive discipline policies or procedures applicable during the relevant time period," we are confirming that there are no CVS Health progressive discipline policies or procedures during the relevant time period that were applicable to circumstances in which an employee refuses to fulfill a condition of his or her employment.

Please note as well that to the extent your requests have been determined to be unrelated or irrelevant to Mr. Neerman's claim for severance benefits and thus are not required to be provided under ERISA, we have not provided same.

Finally, as I noted in my January 15, 2020 email, I have suspended my review of Mr. Neerman's appeal while we were gathering the relevant documents responsive to your document request. Now that we have provided you with the relevant requested documents, I intend to begin my review of Mr. Neerman's appeal and respond to you within 60 days of today's date.  Accordingly, please let me know as soon as possible if you intend to submit additional information in support of Mr. Neerman's appeal so that I can be sure to take any such information into account during my review.

Regards,

Keith Christensen


**Keith Christensen** │Senior Vice President, HR Corporate Services
**p** 401-770-5427 │**f**  401-652-9120 │**e** keith.christensen@CVSHealth.com
**CVS Health** │1 CVS Drive Woonsocket RI 02895

CONFIDENTIALITY NOTICE: This communication and any attachments may contain confidential and/or privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify the sender immediately by email or telephone and destroy all copies of this communication and any attachments.

**Ryan Johnson**

| | |
|---|---|
| **From:** | Ryan Johnson |
| **Sent:** | Thursday, April 30, 2020 3:16 PM |
| **To:** | Christensen, Keith J. |
| **Subject:** | RE: Neerman Appeal - Document Request |

Mr. Christensen:

On February 11, 2020, you sent me a letter with documents concerning Mr. Neerman's Appeal of his denial of benefits. In this letter, you requested any additional information and stated that you "**intend to begin my review of Mr. Neerman's appeal and respond to you within 60 days of today's date [February 11].**" Your response was due by April 11, 2020, but none was received. Likewise, the Plan and the original denial letter (dated October 28, 2019) stated "**if a review on an appeal is made, the Administrator will advise Mr. Neerman (or his duly authorized representative), in writing, of the Administrator's decision <u>within 60 days of receipt of the written appeal</u>, unless special circumstances require an extension of such 60-day period for <u>not more than an additional 60 days.</u> <u>Where such an extension is necessary, written notice will be provided of the delay before the expiration of the initial 60-day period.</u>**"

On March 11, 2020, my office sent you a detailed letter in response to your e-mail dated February 11 concerning Mr. Neerman's appeal. I then sent you e-mails on April 6 and April 15 requesting a status update. I never received any response to the March 11, April 6 or April 11 letters and/or emails. According to your February 11, 2020 e-mail (as well as the Plan and the original denial by CVSH), you were required to review the appeal and provide a formal response within sixty days of February 11, 2020 (or before April 11). You never provided a response.

It is now April 30 and we have received no response. In addition, my requests for status updates have been altogether ignored.

At this point, without even a response from you or CVSH, I can only assume that CVSH has no intention of complying with the Plan or otherwise fulfilling its promises and representations of providing a final and timely determination of the Appeal. I am frankly surprised that CVSH would so obviously ignore the plain language of its Plan and/or simply ignore such stated deadlines.

At this point, Mr. Neerman has clearly exhausted all administrative processes and remedies afforded by the Plan. Without any response (timely or otherwise) from CVSH, it appears CVSH has WAIVED its rights and remedies under the Plan and is prepared to accept Neerman's demand.

If you fail to respond within the next 24 hours, I will be left to assume CVSH has WAIVED its prior denial of Neerman's claim under the Plan. I will also raise this issue to additional management within CVSH and add these actions and/or omissions to Mr. Neerman's claims.

*Ryan C. Johnson*

JOHNSON | HOBBS | SQUIRES LLP
400 Austin Avenue, 9th Floor
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com

Linked in profile

1



The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Ryan Johnson
**Sent:** Wednesday, April 15, 2020 3:02 PM
**To:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Subject:** RE: Neerman Appeal - Document Request

Mr. Christensen:

Again, I have no record of receiving a response from CVSH to my letter dated March 11, 2020.  Please advise whether and when we can expect a response from CVSH so that we know how to proceed.

*Ryan C. Johnson*

JOHNSON | HOBBS | SQUIRES LLP

400 Austin Avenue, 9th Floor
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com

Linked in profile



The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Ryan Johnson
**Sent:** Monday, April 6, 2020 4:59 PM
**To:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Subject:** RE: Neerman Appeal - Document Request

Mr. Christensen:

I have no record of receiving a response from CVSH to our letter dated March 11, 2020.  Please advise whether and when we can expect a response from CVSH so that we know how to proceed.

*Ryan C. Johnson*

JOHNSON | HOBBS | SQUIRES LLP

400 Austin Avenue, 9th Floor
Waco, Texas 76701

(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com

Linked in profile



The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Ryan Johnson
**Sent:** Wednesday, March 11, 2020 3:39 PM
**To:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Subject:** RE: Neerman Appeal - Document Request

Mr. Christensen:

We've reviewed your e-mail response, along with the additional documents produced by CVSH.

Please find the attached Response to your February 11, 2020 e-mail (and Additional Document production by CVSH).

We'd request that CVSH (1) enter the FINDINGS contained in the attached Response into the RECORD and (2) produce the remaining documents requested by Neerman.

Thanks.

*Ryan C. Johnson*

JOHNSON | HOBBS | SQUIRES LLP
400 Austin Avenue, 9th Floor
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (facsimile)
rjohnson@jhsfirm.com
www.jhsfirm.com

Linked in profile



The information transmitted in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient(s) is prohibited.  Unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature.  If you received this in error, please contact the sender and delete the material from any computer.

**From:** Christensen, Keith J. <Keith.Christensen@CVSHealth.com>
**Sent:** Tuesday, February 11, 2020 5:55 PM
**To:** Ryan Johnson <rjohnson@jhsfirm.com>
**Subject:** Neerman Appeal - Document Request

Dear Attorney Johnson,

Please find attached a .PDF of the relevant documents you requested related to Mr. Neerman's appeal of his denial of severance benefits under Aetna's Job Elimination Benefits Plan, which include all documents and communications contained in the record before the Administrator and/or which have been reviewed by Candace Jodice in reaching her original Determination of Claim; a copy of the email sent to Mr. Neerman on April 2, 2019 from Executive Compensation Client Services; the CVS Health memo and restrictive covenant agreement ("RCA") sent to Mr. Neerman from Adobe Sign on April 3, 2019; all documents and communications provided to Mr. Neerman in connection with his termination and/or separation from employment; all documents and communications indicating or suggesting that executing the RCA was a condition of Mr. Neerman's employment; and all documents and communications stating, indicating or suggesting that any equity awards were conditioned upon Mr. Neerman's execution of the RCA.

In addition, we have forwarded your request for Mr. Neerman's employment file to the HR department, and once the request has been processed, the file will be forwarded to you.  We anticipate that the file will be sent to you in the very near future.

With respect to your request for "All CVSH progressive discipline policies or procedures applicable during the relevant time period," we are confirming that there are no CVS Health progressive discipline policies or procedures during the relevant time period that were applicable to circumstances in which an employee refuses to fulfill a condition of his or her employment.

Please note as well that to the extent your requests have been determined to be unrelated or irrelevant to Mr. Neerman's claim for severance benefits and thus are not required to be provided under ERISA, we have not provided same.

Finally, as I noted in my January 15, 2020 email, I have suspended my review of Mr. Neerman's appeal while we were gathering the relevant documents responsive to your document request. Now that we have provided you with the relevant requested documents, I intend to begin my review of Mr. Neerman's appeal and respond to you within 60 days of today's date.  Accordingly, please let me know as soon as possible if you intend to submit additional information in support of Mr. Neerman's appeal so that I can be sure to take any such information into account during my review.

Regards,

Keith Christensen

**Keith Christensen** │ Senior Vice President, HR Corporate Services
**p** 401-770-5427 │ **f** 401-652-9120 │ **e** keith.christensen@CVSHealth.com
**CVS Health** │ 1 CVS Drive Woonsocket RI 02895

CONFIDENTIALITY NOTICE: This communication and any attachments may contain confidential and/or privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify the sender immediately by email or telephone and destroy all copies of this communication and any attachments.